**STATE of Tennessee, Appellee,**

v.

**Ronnie McKNIGHT, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Nov. 21, 1994.

Permission to Appeal Denied by Supreme Court Feb. 27, 1995.

Richard Hughes, Jr., Cleveland, for appellant.

Charles W. Burson, Atty. Gen. and Reporter, and Jeannie Kaess, Asst. Atty. Gen., Nashville, for appellee.

## *OPINION*

WADE, Judge.

The defendant, Ronnie C. McKnight, was convicted of eight counts of rape, eight counts of statutory rape, seven counts of sexual battery, fifteen counts of exhibiting pornography to a minor, seven counts of assault, two counts of furnishing alcoholic beverages to a child, one count of contributing to the delinquency of a minor, and one count of attempt to commit aggravated sexual battery. Though the trial court purported to impose an effective sentence of seventy-three years, less nineteen days, our calculations suggest that the effective sentence was actually seventy-one years, less fifteen days. The fifty charges against the defendant were resolved as follows:

*Count One:* Assault Six months;

*Count Two:* Attempt to Commit Aggravated Sexual Battery Five years (Range I);

*Count Three:* Exhibiting Pornography to a Minor Eleven months, twenty-nine days;

*Count Four:* Rape Ten years (Range I);

*Count Five:* Sexual Battery One year, six months (Range I);

*Count Six:* Exhibiting Pornography to a Minor Eleven months, twenty-nine days;

*Count Seven:* Statutory Rape One year, six months (Range I);

*Count Eight:* Statutory Rape One year, six months (Range I);

*Count Nine:* Assault Eleven months, twenty-nine days;

*Count Ten:* Assault Eleven months, twenty-nine days;

*Count Eleven:* Exhibiting Pornography to a Minor Eleven months, twenty-nine days;

*Count Twelve:* Assault Eleven months, twenty-nine days;

*Count Thirteen:* Assault Eleven months, twenty-nine days;

*Count Fourteen:* Furnishing Alcoholic Beverages to a Child Eleven months, twenty-nine days;

*Count Fifteen:* Exhibiting Pornography to a Minor Eleven months, twenty-nine days;

*Count Sixteen:* Exhibiting Pornography to a Minor Eleven months, twenty-nine days;

*Count Seventeen:* Furnishing Alcoholic Beverages to a Child Eleven months, twenty-nine days;

*Count Eighteen:* Assault Six months;

*Count Nineteen:* Exhibiting Pornography to a Minor Eleven months, twenty-nine days;

*Count Twenty:* Exhibiting Pornography to a Minor Eleven months, twenty-nine days;

*Count Twenty–One:* Exhibiting Pornography to a Minor Eleven months, twenty-nine days;

*Count Twenty–Two:* Rape Ten years (Range I);

*Count Twenty–Three:* Sexual Battery One year, six months (Range I);

*Count Twenty–Four:* Rape Ten years (Range I);

*Count Twenty–Five:* Sexual Battery One year, six months (Range I);

*Count Twenty–Six:* Rape Ten years (Range I);

*Count Twenty–Seven:* Sexual Battery One year, six months (Range I);

*Count Twenty–Eight:* Rape Ten years (Range I);

*Count Twenty–Nine:* Sexual Battery One year, six months (Range I);

*Count Thirty:* Rape Ten years (Range I);

*Count Thirty–One:* Sexual Battery One year, six months (Range I);

*Count Thirty–Two:* Exhibiting Pornography to a Minor Eleven months, twenty-nine days;

*Count Thirty–Three:* Exhibiting Pornography to a Minor Eleven months, twenty-nine days;

*Count Thirty–Four:* Exhibiting Pornography to a Minor Eleven months, twenty-nine days;

*Count Thirty–Five:* Exhibiting Pornography to a Minor Eleven months, twenty-nine days;

*Count Thirty–Six:* Exhibiting Pornography to a Minor Eleven months, twenty-nine days;

*Count Thirty–Seven:* Assault Acquitted

*Count Thirty–Eight:* Sexual Battery One year, six months (Range I);

*Count Thirty–Nine:* Rape Ten years (Range I);

*Count Forty:* Assault Six months;

*Count Forty–One:* Statutory Rape One year, six months (Range I);

*Count Forty–Two:* Exhibiting Pornography to a Minor Eleven months, twenty-nine days;

*Count Forty–Three:* Contributing to the Delinquency of a Minor Eleven months, twenty-nine days;

*Count Forty–Four:* Rape Ten years (Range I);

*Count Forty–Five:* Statutory Rape One year, six months (Range I);

*Count Forty–Six:* Statutory Rape One year, six months (Range I);

*Count Forty–Seven:* Statutory Rape One year, six months (Range I);

*Count Forty–Eight:* Statutory Rape One year, six months (Range I);

*Count Forty–Nine:* Statutory Rape One year, six months (Range I);

*Count Fifty:* Exhibiting Pornography to a Minor Eleven months, twenty-nine days.

The sentences in counts one through seven, nine, eleven, twelve, fourteen through nineteen, twenty-two, twenty-three, thirty-two through thirty-four, thirty-eight through forty-five, and fifty were ordered to be served consecutively. The remaining counts were ordered to be served concurrently, both with each other and with the consecutive sentences.

In this appeal, the defendant presents four issues for review:

(1) whether the evidence is sufficient as to counts one through five, seven through ten, twelve, thirteen, eighteen, twenty-two through thirty-one, thirty-eight through forty-one, and forty-four through forty-nine;

(2) whether the trial court erred in consolidating the offenses for trial;

(3) whether, as to count two, the trial court erred in refusing to instruct the jury on simple assault as a lesser included offense of aggravated sexual battery; and

(4) whether the sentence imposed by the trial court is excessive.

We reverse the conviction on count two, for which a five year consecutive sentence had been ordered; the cause is remanded for a new trial. We reverse and dismiss counts nine and ten. We modify the rape conviction on count forty-four to statutory rape and impose a one and one-half year consecutive sentence. Otherwise, the convictions and sentences are affirmed.

### General Background

The defendant, a single truck driver and a life-long resident of Bradley County, lived in a small house called "the shack" which was located in the backyard of his mother's residence. At the time of the trial, the defendant was 48 years old. Over the years, he had taken a strong interest in the children of his neighborhood, particularly the young boys. Typically, he would initiate relationships with boys who ranged in age from nine to fifteen by buying them things to eat, paying for their video games, or engaging them in games of pool. After developing a friendly

relationship with the boys, the defendant would first show them "clean" movies at "the shack" and, eventually, pornographic cartoons and films. Over time, the defendant made overtures of a sexual nature in varying degrees with many of the boys who visited "the shack." These incidents occurred between 1989 and 1992.

### Count One

In October, 1991, the defendant directed DC [1], age thirteen, to his bed, placed his hand inside DC's pants, and touched his penis. When DC pulled the defendant's hand back, the defendant instructed DC to "play with" his penis. DC refused to participate, pulled his hand away, and lay on the floor to sleep. The defendant told DC not to tell his parents what had happened.

The defendant had been acquainted with DC for approximately seven years when this incident occurred. An aunt lived near "the shack" and DC would often visit with the defendant. On a number of occasions, the defendant had taken DC out to eat, to play video games, and to fish. He had offered DC, TG, and JL alcoholic beverages once and had often showed them pornographic videos. DC continued to spend time with the defendant after the 1991 incident, but was never again the subject of the defendant's sexual advances.

These events resulted in a single assault conviction.

### Counts Two and Three

In August of 1992, TM, age twelve, went to "the shack" with one of his friends (JW's cousin) and met the defendant for the first time. JW and MW (JW's brother) had arrived earlier. The defendant showed the boys a pornographic cartoon. After about thirty minutes, the defendant rubbed TM's right thigh near his hip. TM pushed his hand away. He told one of his friends what had happened and then left. Later, TM reported the incident to his parents.

Based upon these occurrences, the defendant was convicted of attempt to commit aggravated sexual battery and exhibiting pornography to a minor.

### Counts Four Through Six

Sometime between January and June of 1992, KM, age thirteen, and TG went to "the shack." Two other boys were already there. The defendant took all of them to a restaurant where he bought their dinners and let them play pool. After returning to "the shack", the defendant showed them several pornographic videos, including a pornographic cartoon. As the tapes played, the defendant provided a detailed narrative of the various sexual activities exhibited.

Each of the boys spent the night at "the shack." KM slept in the same bed as the defendant. During the night, KM awoke to find his boxer shorts pulled down and the defendant "playing with" his penis. When KM pushed him away, the defendant forcibly engaged the victim in oral sex. KM quickly pushed away the defendant's head and went to sleep on the floor. The next morning the defendant kissed KM on the forehead and told him that he loved him. He offered KM an alcoholic beverage and promised to buy him beer if he came back again.

KM testified that he was embarrassed by the incident and did not tell anyone about what had happened. Initially afraid that no one would believe him, KM later sought counseling to help deal with the incident.

These events resulted in convictions for rape, sexual battery, and exhibiting pornographic materials to a minor.

### Counts Seven Through Eleven

JP and his brother, SP, were introduced to the defendant by their babysitter. JP, who lived on the same street as the defendant, spent a considerable amount of time at "the shack" and often ate or engaged in recreational activities at the defendant's expense.

After an acquaintanceship of about two years, the defendant began to behave inappropriately toward JP. He showed him pornographic videos on a regular basis. Some of the tapes showed "real" people engaging in sexual activities while others involved car-

---

1. Initials, rather than the names of the victims, are used to protect the minor victims' privacy.

toon characters. Generally, several young boys, including SP, TG, DB, JW, GH and DC, gathered at "the shack" while the videos were shown.

In October of 1989, the defendant initiated sexual contact with JP, then thirteen years of age. On two occasions, the defendant fondled JP and performed oral sex on him. JP testified that he did not resist the defendant because the defendant "made him feel good."

Based upon these occurrences, the defendant was convicted on two counts of statutory rape and two counts of assault.

### Counts Twelve Through Fifteen

JL met the defendant through JL's friend, TG. For a time, JL saw the defendant three or four days a week. Often, they would eat together or shoot pool.

After a time, the defendant began to show JL pornographic home movies. Some included "real" people engaging in sexual activities and others displayed cartoon characters. On one occasion, the defendant gave JL, age fourteen, an alcoholic beverage and instructed him not to tell anyone. On two subsequent occasions, the defendant "patted" JL on the bottom as he stepped out of the defendant's van.

These occurrences led to convictions on two counts of assault, furnishing alcoholic beverages to a child, and exhibiting pornography to a minor.

### Counts Sixteen and Seventeen

NH, who lived next door to "the shack", met the defendant through his uncle JH. For a time, the defendant showed "clean" movies to NH and any other of the boys in his company. He often paid for NH and the others to shoot pool, to play video games, or to eat out.

After about a year and a half, the defendant began to talk to NH, then age eleven, about sex. At trial, NH was able to provide a detailed description of the pornographic videos that the defendant displayed. JH testified that the defendant gave him alcoholic beverages more than once. Later, after these events were discovered, NH sought counseling and was placed on medication.

Based upon these facts, the defendant was convicted of exhibiting pornography to a minor and furnishing alcoholic beverages to a child.

### Counts Eighteen Through Twenty–One

JW, age thirteen, lived in the defendant's neighborhood but had only known him for a short period of time. As with his other victims, the defendant often paid for JW's meals and recreational activities. Three times thereafter, the defendant showed JW pornographic cartoons and videos. Many times, there were other boys present at "the shack" while the tapes were shown. Those participating were GH, TG, JL, KM, DB, and TM. On one occasion, the defendant placed his hand inside JW's pants and rubbed his penis.

These occurrences led to a conviction for assault and three separate convictions for exhibiting pornography to a minor.

### Counts Twenty–Two Through Thirty–Two

SP had known the defendant for approximately six years before the defendant initiated sexual contact. During those first six years, the defendant would occasionally take SP out to eat and bear the expense of video games, pool, or other activities.

By 1990, the defendant often asked SP, then thirteen years of age, to sit on his bed. He gave SP hugs. And, when SP tried to pull away, the defendant would not let go. Gradually, the defendant started rubbing SP's back and, eventually, his "private parts." Thereafter, the defendant periodically performed oral sex on SP and showed him pornographic videos. These sexual encounters spanned a period of almost one and one-half years. When the defendant made SP perform anal intercourse on him, however, SP left and never returned.

SP testified that he had originally cooperated with the defendant only because the defendant threatened to tell people that SP was "gay" or "a fag." When asked why he voluntarily returned to "the shack" after the defendant initiated sexual contact, SP ex-

plained that he liked to talk to the defendant who, many times, did not act improperly.

Based upon these circumstances, the defendant was convicted on five counts of rape, five counts of sexual battery, and exhibiting pornographic materials to a minor.

### Count Thirty–Three

As he did with his other victims, the defendant often took JH out to eat and to play games. Nothing improper had occurred during his initial visits to "the shack." On one afternoon, however, the defendant showed JH and JH's nephew, NH, pornographic videos. JH's description of the content of the videos was similar to that given by the other victims. The defendant instructed JH, then eleven years old, not to tell anyone about the occurrence.

On these facts, the jury convicted the defendant of exhibiting pornographic materials to a minor.

### Counts Thirty–Four Through Thirty–Seven

DB, age fifteen, lived with his grandparents in the same neighborhood as the defendant and met him through a schoolmate, JP. The defendant showed him pornographic videos on his first visit to "the shack." Some of these videos contained "real" people engaged in various sexual activities, while others involved cartoon characters. Several of the defendant's other victims, including JP and GH, were frequently at "the shack" during his visits. Often, the defendant paid for DB to eat out, shoot pool, and play video games.

In April of 1992, the third time they watched pornographic videos together, the defendant touched DB somewhere "below the belly button but above the genitals." DB testified that he thought the defendant was making a "pass" at him and so he left.

The jury convicted the defendant on three counts of exhibiting pornographic materials to a minor. The defendant was acquitted on count thirty-seven, an assault charge.

### Counts Thirty–Eight Through Forty–Three

The defendant had taken TG, a neighbor, to eat out once and to play games on several occasions. By the time of trial, TG had known the defendant for approximately four years. During this acquaintanceship, the defendant often talked to TG about sex and showed him pornographic videos. Usually, there were several boys at "the shack" when the defendant showed the videos. TG's description of the content closely matched that of the other victims. On one visit, the defendant offered alcoholic beverages to TG and two of his friends, JL and DC. In September of 1991 and again in September of 1992, the defendant held TG down, first put his hands down TG's pants, and thereafter performed oral sex on him. TG was thirteen when the defendant first made sexual contact.

TG was able to corroborate somewhat the testimony of two of the defendant's other victims. He related that on one visit, JW had complained to him that the defendant had "put his hands down [JW's] pants." Although TG was present, he did not actually see the incident. TG also testified that the defendant told him that he intended to get KM drunk on Thunderbird wine and have him perform oral sex.

Based on these events, the defendant was convicted of sexual battery, rape, assault, statutory rape, exhibiting pornography to a minor, and contributing to the delinquency of a minor.

### Counts Forty–Four Through Forty–Nine

GH, who lived with his grandmother in the defendant's neighborhood, had known the defendant almost his entire life. Over the years, the defendant took GH out to eat, to play games, and to fish. GH watched "clean" movies at "the shack" quite often, believed that the defendant was his friend, and trusted him completely.

When GH was about thirteen years of age, the defendant showed him pornographic videotapes. Some depicted cartoon characters and others, "real" people. Because he generally visited with the defendant several

times a week, GH saw the videos a number of times. Many times, other boys would also watch the videos. GH specifically recalled that TG, JL, JP, and JW had been present at the time the defendant had shown the pornographic videos.

In June of 1989, when GH was fifteen, the defendant took him on a fishing trip. He testified that the defendant took him on a walk in order to show him a trail; after a short distance, the defendant started to hug and kiss GH. After each had removed his clothes, the defendant then performed both oral sex and anal intercourse on GH and later instructed him not to tell anyone about the incident. At trial, GH explained that he did not complain because he "was ashamed."

Two years later, the defendant and GH engaged each other in oral sex during the playing of a pornographic video. A month later, the two repeated the acts. Approximately one year passed before the defendant again had sexual contact with the victim. Each performed oral sex on the other and the defendant performed anal intercourse on GH. A short time later, the defendant performed oral sex on GH while the two were at the residence of the defendant's mother. Several months after that, each again performed oral sex on the other. GH explained that he continued to visit "the shack" because the defendant was "good to" him.

Based upon these six separate events, the defendant was convicted of rape and five counts of statutory rape.

### Count Fifty

WW resided with his grandmother in the defendant's neighborhood. A brother to NH, WW testified that he went to "the shack" only a couple of times. In July of 1992, the defendant played a pornographic movie in his presence. JH and NH were also present on this occasion. WW was nine years old at the time.

On these facts, the defendant was convicted of exhibiting pornographic material to a minor.

### Investigation and Search

Officer Robert C. Hyden, a detective with the Bradley County Sheriff's Department, led the investigation of the allegations made against the defendant. As a part of the team that searched the "the shack" pursuant to a warrant, Officer Hyden found the defendant lying in bed next to JP with his arm around him. JP was not wearing a shirt. DB was also there. The three were watching a pornographic video. Detective Hyden arrested the defendant and recovered several pornographic videos. Some depicted "real" people while others involved only cartoon characters. Detective Hyden also confiscated a bottle of Thunderbird wine from the defendant's refrigerator.

### Defense

The defendant testified that he merely tried to help these young victims and others like them. He claimed that they were basically "street children" and that he took them out, did nice things for them, and kept them out of trouble. He denied any inappropriate sexual contact with these children, but did say that he had hugged several of the boys, often kissed them on top of the head, and occasionally patted them on their bottoms. The defendant claimed that these actions were not sexually motivated. He explained that he allowed JP, DB, and GH to watch pornographic movies with him only because he thought they were old enough to see them.

The defendant's sister, Betty Presswood, testified that she often had to check on "the shack" while the defendant was away because young boys would continue to hang out down there. She specifically remembered SP, JP, and GH. Ms. Presswood also recalled the defendant claiming that "the shack" had been burglarized and that several pornographic videos, a VCR, and other personal items had been stolen. She implied that some of the victims had burglarized "the shack" and taken the items stolen, thus giving them access to the pornographic videos.

Several character witnesses testified for the defendant. Dwayne Kerr related that the defendant had allowed him to live at "the shack" for about one and one-half years, had

gotten him two jobs, and had always conducted himself properly. Kerr believed that the defendant was "a fine person," totally incapable of the crimes alleged. John Jones, who had known the defendant for most of his life and had spent the night at "the shack" several times, testified that the defendant had never attempted sexual contact with him. James Flowers, who had known the defendant since he was a child, often stayed overnight at "the shack" and "ran around with" the defendant. Flowers described the defendant as a very good person, incapable of child mistreatment.

David Mavromat, the defendant's step-nephew, testified that the defendant had lived with his family for a period of time. Although he had been alone with the defendant on a number of occasions when 17 years of age, the defendant had never made any improper sexual overtures. Mavromat had a high opinion of the defendant.

Elizabeth Kay Fisher attested to the generosity the defendant had shown her family. She acknowledged that the defendant had also been very kind to her two sons. One of her sons, Lee Fisher, testified that he had spent time with the defendant and that the defendant had been a good friend.

Finally, David Caul, a brother to one of the victims, testified that he had known the defendant for several years, had spent the night alone with him, and had never been subjected to any sexual advances. Caul believed the defendant to be incapable of the sexual impropriety alleged.

### I

Initially, the defendant contends that the evidence is insufficient to support his convictions on counts one through five, seven through ten, twelve, thirteen, eighteen, twenty-two through thirty-one, thirty-eight through forty-one, and forty-four through forty-nine. The state argues otherwise.

■ We are guided in our review by several well-established principles. On appeal, the state is entitled to the strongest legitimate view of the evidence and all inferences which might be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.

1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted exclusively to the jury as triers of fact. *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn.Crim.App.1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Williams*, 657 S.W.2d 405, 410 (Tenn.1983), *cert. denied*, 465 U.S. 1073, 104 S.Ct. 1429, 79 L.Ed.2d 753 (1984); Tenn.R.App.P. 13(e).

### A

■ The defendant claims that the evidence is insufficient as to counts seven through ten, thirty-nine, forty-one, and forty-four through forty-nine because his victims, JP, TG, and GH, were accomplices to the crimes and their testimony was uncorroborated. This claim is based upon the general proposition that a defendant cannot be convicted upon the uncorroborated testimony of accomplices. *Sherrill v. State*, 204 Tenn. 427, 321 S.W.2d 811 (1959); *Prince v. State*, 529 S.W.2d 729, 732 (Tenn.Crim.App.1975). An accomplice is defined as a person who knowingly, voluntarily, and with common intent with the principal offers to unite in the commission of a crime. *Clapp v. State*, 94 Tenn. 186, 30 S.W. 214, 216 (1895). *Letner v. State*, 512 S.W.2d 643 (Tenn.Crim.App.1974).

■ The rule is that there must be some fact testified to which is entirely independent of an accomplice's testimony; that fact, taken by itself, must lead to an inference that a crime has been committed and that the defendant is responsible therefor. *State v. Fowler*, 213 Tenn. 239, 373 S.W.2d 460, 463 (1963). This requirement is met if the corroborative evidence fairly and legitimately tends to connect the accused with the commission of the crime charged. *Marshall v. State*, 497 S.W.2d 761 (Tenn.Crim.App.1973). Only slight circumstances are required to furnish the necessary corroboration. *Garton v. State*, 206 Tenn. 79, 332 S.W.2d 169, 175 (1960). To be corroborative, the evidence need not be adequate in and of itself to

convict. *Conner v. State,* 531 S.W.2d 119 (Tenn.Crim.App.1975).

■ Initially, we hold that corroboration of the victims' testimony was unnecessary to convict the defendant on counts thirty-nine and forty-four. A defendant can be convicted of simple rape based solely upon testimony of the victim. *Montgomery v. State,* 556 S.W.2d 559, 560 (Tenn.Crim.App.1977). Still, the "charge of rape [must] be fully made out by proof clear and sufficient to satisfy the jury's mind of [the] defendant's guilt beyond a reasonable doubt." *Carroll v. State,* 212 Tenn. 464, 370 S.W.2d 523, 527 (1963).

As to count thirty-nine, the proof was that the defendant "held down" TG and performed oral sex on him. The defendant had known TG for a lengthy period of time when this occurred and had shown TG pornographic movies.

■ Rape is unlawful sexual penetration accomplished by force or coercion or fraud or committed upon a physically or mentally helpless victim. Tenn.Code Ann. § 39–13–503. "Force means completion by the use of physical power ... and shall be broadly construed...." Tenn.Code Ann. § 39–11–106. Because the victim was only thirteen years old, the jury could have found "force" based upon the state's proof that TG had been "held down."

■ Moreover, TG gave a detailed description of the acts committed against him by the defendant. Other victims described similar patterns of conduct. These acts fit the defendant's *modus operandi.* His entire course of conduct with the other victims may be used as corroboration for these offenses. *See Binkley v. State,* 1 Tenn.Crim.App. 214, 434 S.W.2d 336 (1968). Therefore, even if each rape conviction required corroboration, the state supplied that corroboration through similar conduct against other victims.

■ Count forty-four presents a greater problem. While on a fishing trip, the defendant performed both oral sex and anal inter-

course on GH, then only thirteen years old. There was no force or threat. Without those elements there could be no "coercion" as statutorily defined. *See* Tenn.Code Ann. § 39–11–106(a)(3) and § 39–13–501(1). Thus the rape conviction must be modified to statutory rape. *See State v. Brown,* 836 S.W.2d 530 (Tenn.1992).

We do agree that the defendant could not have been convicted solely upon the uncorroborated testimony of JP on counts seven through ten; TG on count forty-one; and GH on counts forty-five through forty-nine. Counts nine and ten are convictions for assault, all others are for statutory rape. Each of these victims qualified as accomplices to these offenses.

■ We will first address the statutory rape convictions. Proof of force or coercion is not required to satisfy the elements of statutory rape. If the defendant is at least four years older than the victim, proof of sexual penetration of a victim between the ages of thirteen and eighteen, is all that is necessary. Consent is not a defense. *See* Tenn.Code Ann. § 39–13–506. The defendant was charged with the crime of rape on each of the statutory rape convictions. To prove rape, however, the act must have been accomplished by force, coercion, fraud, or by taking advantage of one who is physically or mentally handicapped. *See* Tenn.Code Ann. § 39–13–503. The jury convicted the defendant of the lesser included offense of statutory rape. The logical inference is that the jury found the victims had consented to the defendant's sexual advances and, thus, were accomplices.

Here, GH had seen JP at "the shack" when pornographic videos were being shown.[2] DC had seen TG watching pornographic movies at "the shack". JP and JL had also seen TG there when the videos were played. GH had been seen at "the shack" by JP, JW, and DB when the defendant showed the pornographic films.

---

2. GH was the only victim who testified that TG had watched pornographic videos at "the shack." Because GH was an accomplice, we find that his testimony, standing alone, is insufficient to corroborate the testimony of TG. *See*

*State v. Jordan,* No. 03C01–9109–CR–289, 1992 WL 295548 (Tenn.Crim.App., Knoxville, October 20, 1992) (Wade, J., dissenting). Here, however, there was other non-accomplice testimony which sufficiently corroborated TG's testimony.

The mere fact that these accomplices/victims had been seen watching pornographic videos at "the shack" would not ordinarily be considered sufficient corroboration to convict the defendant of statutory rape. Here, however, we believe it to be sufficient because the defendant left his "signature" on each of his crimes. There was a commonality in the scheme and plan between these events and the others at trial. There was independent testimony that the defendant first gained the friendship and trust of his victims by providing food and recreation. He then invited them to his home and showed them pornographic videos. Because that pattern of preparatory conduct generally resulted in the sexual advances of the defendant towards his victims, it circumstantially corroborated the accomplices' testimony of statutory rape. *See Binkley v. State,* 434 S.W.2d at 338.

Also, Detective Hyden corroborated the crimes. When he entered "the shack" pursuant to a search warrant, he observed the defendant lying in bed next to JP with his arm around him. He also found several pornographic movies which matched the descriptions given by these victims. In addition, he seized a bottle of Thunderbird wine, the same brand that the defendant told TG he intended to use to get KM drunk.

The testimony of these three victims was supported by that of other victims, evidence of a common scheme or plan, and the proof offered by Detective Hyden. Corroboration need only be slight. Under these circumstances, we find that the jury properly determined that there was sufficient corroboration of the statutory rapes of JP, TG, and GH.

We now turn to the assault convictions on counts nine and ten involving JP. The defendant was initially charged with sexual battery:

(a) Sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the circumstances listed in § 39–13–503(a).

Tenn.Code Ann. § 39–13–505(a). Those circumstances include sexual contact (1) by force or coercion; (2) by fraud; or (3) by act against the mentally defective, mentally incapacitated, or physically helpless. Tenn.Code Ann. § 39–13–503(a). On two of these counts, the jury convicted the defendant of assault instead of sexual battery. The clear inference is that the jury found that the defendant had used neither force nor coercion when he made sexual contact with JP. JP admitted that he did not resist. The defense argues that JP's failure to resist the defendant's advances made him an accomplice and served as a defense to the assault charges. We must agree.

The consent of the victim is no defense to statutory rape. The same does not hold true for assault. Statutory rape occurs when the victim is between 13 and 17 years of age and the defendant is at least four years older. *See* Tenn.Code Ann. § 39–13–506. Assault is defined as follows:

(a) A person commits assault who:

(1) Intentionally, knowingly or recklessly causes bodily injury to another;

(2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury[.]

Tenn.Code Ann. § 39–13–101(1) & (2).[3]

In order to support the assault convictions, the state must have proved that JP feared "imminent bodily injury." It did not do so. JP admitted that he consented to the defendant's sexual advances because he made him "feel good." JP did not claim to have suffered any bodily injury as a result of the defendant's acts. For these reasons, we must reverse and dismiss both count nine and count ten.

### B

Next, the defendant argues that the evidence is insufficient to support the assault convictions, counts twelve and thirteen, because the state failed to prove that the acts

---

**3.** The trial court sentenced the defendant to eleven months, twenty-nine days for each of these two assault counts. For that reason, we do not address assault as defined in Tenn.Code Ann.

§ 39–13–101(a)(3). A conviction pursuant to this section carries a maximum sentence of six months.

were done for sexual gratification. We disagree.

The proof established that on two separate occasions, the defendant patted JL on the bottom. Although the defendant claimed that he did this as a gesture of approval and friendship, it was the jury's prerogative to reject that theory. The state proved that the defendant had also rubbed JL's back and asked for a hug immediately before committing this act. JL testified about the discomfort he felt when the defendant touched him. In the context of the surrounding circumstances, a rational trier of fact could have properly determined that the acts of the defendant were committed for sexual gratification.

### C

▮ Lastly, the defendant claims that the evidence was insufficient to establish that the defendant used either the force or coercion necessary to support the rape and sexual battery of SP on counts twenty-two through thirty.

As previously noted, there must be proof of either force or coercion to support a conviction for rape or sexual battery. *See* Tenn. Code Ann. §§ 39–13–503 and 39–13–504. Coercion is defined as follows:

> [T]hreat of kidnapping, extortion, force or violence to be performed immediately or in the future or the use of parental, custodial, or official authority over a child less than fifteen (15) years of age.

Tenn.Code Ann. § 39–13–501(1).

There was evidence that the defendant threatened to tell people that SP was a homosexual if he did not cooperate. Because SP could have avoided any intimidation by simply telling his family what had happened, the defendant argues that there was no coercion through "extortion." We do not agree.

In this state, it is a Class C misdemeanor for a person to engage in homosexual activities. Tenn.Code Ann. § 39–13–510. Technically, SP could have been criminally prosecuted had the defendant carried out this threat. Certainly, SP might have been embarrassed by any accusations of homosexuality. For these reasons, we believe a rational

jury could have properly found the element of coercion.

### II

▮ Next, the defendant claims that the trial court erred by granting the state's motion to consolidate the offenses for trial. We do not agree.

▮ While severance is ordinarily a matter which rests within the sound discretion of the trial court, that general rule is not necessarily applicable to the severance of offenses. To qualify as "parts of a common scheme or plan" and joined for a single trial, the offenses must be so similar in *modus operandi* and occur within such relative close proximity in time and location to each other that there can be little doubt that the offenses were committed by the same person. First, the offenses must appear to constitute part of a common scheme or plan. *Webster v. State*, 1 Tenn.Crim.App. 1, 31, 425 S.W.2d 799, 811 (1967). Secondly, the circumstances must fall within the exception to the general rule prohibiting evidence of other crimes in that they are "so related to each other that proof of one tends to establish the others." 20 Am.Jur. *Evidence* § 314 (1939); *Collard v. State*, 526 S.W.2d 112, 114 (Tenn.1975).

▮ Rule 404(b) of the Tennessee Rules of Evidence is pertinent:

> (b) Other Crimes, Wrongs, or Acts—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:
>
> (1) The court upon request must hold a hearing outside the jury's presence;
>
> (2) The court must determine that a material issue exists other than conduct conforming with the character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and
>
> (3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

The general rule prohibiting evidence of other crimes has several exceptions. Proof of a common scheme or plan is perhaps one of the more frequently used of these exceptions. The procedure outlined in the rule requires a jury-out hearing, a finding that the "other act" addresses a relevant issue such as common scheme or plan, and a balancing of probative value against unfair prejudicial effect. Factors in weighing the probative value include the prosecution's need for the evidence, the likelihood the defendant committed the other crimes, and the degree of its relevance. The similarity of the acts makes the probative value particularly significant. The distinctive design in the commission of a series of crimes may serve as the basis for either admitting evidence of other crimes or having consolidated trials.

Our analysis of the variety of Tennessee cases dealing with this particular issue begins with the exception to the rule:

> [T]he law permits proof of a plan or scheme to commit a series of crimes including the one for which the accused is being tried, and, as tending to show the existence of such plan or scheme, it allows testimony of the commission of crimes other than the one charged, but so related in character, time and place of commission as to tend to support the conclusion that there was a plan or system which embraced both them and the crime which is charged.

20 Am.Jur. *Evidence* § 314 (1939); 638 S.W.2d at 840.

Another treatise suggests the common scheme exception is particularly applicable to the "signature" crime. That is, *the uniqueness of the method used* in the crimes is the test of admissibility. *McCormick on Evidence* 560 (E. Cleary ed. 3d ed. 1984) (emphasis added).

This court addressed the issue in *White v. State*, 533 S.W.2d 735 (Tenn.Crim.App.1975). In a lengthy analysis authored by former Presiding Judge Duncan, the court approved a conviction of rape when a part of the state's evidence was that the defendant had committed two prior, similar rapes within two months of that for which the defendant stood trial. The purpose of the testimony was to establish the defendant's identity and course of conduct. Similarities of the crimes were that the defendant used a knife, forced his victim into the back seat of his vehicle, required them to disrobe, discussed drugs, and allowed the victims to use tissue. Two of the three victims had their glasses removed and were beaten. In each of the three instances, the defendant traveled in his car with the victims, took their purses, and later released them onto the street. Our court held that these rapes were so "strikingly similar that there [could] be no other conclusion than the fact that the defendant committed all three...." 533 S.W.2d at 741.

In 1980, the supreme court permitted evidence of another crime in the prosecution of an armed robbery. While acknowledging the general rule that the evidence was inadmissible based upon irrelevancy and obvious prejudice, the court reaffirmed the exception to the rule:

> [The] *modus operandi* of the other crime and of the crime on trial must be substantially identical *and must be so unique* that proof that the defendant committed the other offense fairly tends to establish that he also committed the offense with which he is charged.

*Bunch v. State*, 605 S.W.2d 227, 230 (Tenn. 1980) (emphasis in original). In that case, the two robberies were similar in a number of ways:

> (1) they were accomplished by three robbers consisting of two men and one woman;
>
> (2) the victims were placed in restrooms;
>
> (3) the two businesses were in close proximity; and
>
> (4) they occurred on the same day, one at 11:30 A.M. and the other at 3:30 P.M.

The court explained its conclusion in the following way:

> [I]t is not necessary that the other crime be identical in every detail to the other offense on trial; *it is sufficient if evidence of the other crime supports the inference that the perpetrator of it, shown to be the*

defendant, is the same person who committed the offense on trial.

*Id.* at 231 (emphasis added).

In *State v. Peacock*, 638 S.W.2d 837 (Tenn. Crim.App.1982), this court upheld the denial of a request to sever the counts of an indictment. We ruled that the "mere fact that a defendant has committed a series of armed robberies, ... rapes, or ... other crimes does not mean they are part of a common scheme or plan...." *Id.* at 840. The similarities qualifying the admission of the evidence as an exception to the general rule were described as follows:

> [I]n all three robberies the appellant first knocked on the doors to the houses before entering. He demanded money, drugs and jewelry. In each case appellant forced his victims to disrobe. He used a pistol during all the robberies, and he repeatedly told his victims to not look at his face or he would shoot them. Appellant warned his victims that if they called the police he would return to shoot them.... [T]he victims' residences were in relatively close proximity.... Appellant committed sexual offenses at two of the three residences.

*Id.* at 838.

Former Presiding Judge Walker, wrote that the evidence of each would be admissible in the trials of the others. Thus, the motion for severance was properly denied.

In *State v. Wooden*, 658 S.W.2d 553 (Tenn. Crim.App.1983), our court upheld the admission of evidence of other sex crimes on the basis that the offenses "were so closely similar in *modus operandi* and occurred within such a close proximity of time and location as to satisfy the requirement for joinder." *Id.* at 558. The similarities were as follows:

(1) the victim was a young, white female who lived in an apartment complex and was alone at the time of the offense;

(2) the attacker was in the apartment when the victim arrived or would enter shortly thereafter;

(3) the attacker took precautions against the victim seeing his face;

(4) The attacker performed cunnilingus before penile/vaginal rape; then required his victims to rub his nipples;

(5) the offenses took place over a period of nineteen months within apartment complexes in close proximity to each other.

By use of these authorities, we have no hesitation in holding that the trial court properly consolidated the charges against the defendant. Here, the trial court heard testimony from each of the thirteen victims before ruling on the state's motion to consolidate and the corresponding motion to sever by the defendant. All of the victims were boys between the ages of nine and fifteen. The defendant first befriended his victims by taking them out to eat and paying for their recreational activities. Each victim testified that they had been shown one or more pornographic videos at "the shack." Many described in detail the pornographic cartoons they had been shown. Their descriptions of the contents of pornographic videos, depicting various sexual acts, were similar. Each of the victims with whom the defendant had sexual contact saw these videos as a prelude to the homosexual contact. Almost all of the acts committed by the defendant occurred at "the shack." Most of the victims lived in the defendant's neighborhood. Many were from disadvantaged or broken homes. The defendant generally took the time necessary to establish a relationship of trust before initiating sexual contact.

Though there are some differences in the various allegations against the defendant, the similarities far outweigh those differences. In our view, the circumstances established such a distinctive design that evidence of each of the crimes could be used in the prosecution of the other. Thus, the trial court acted within the boundaries of its discretion by granting the state's motion to consolidate.

### III

■■■ Next, the defendant asserts that the trial court erred on count two by refusing to instruct the jury on simple assault, a lesser included offense of attempted aggravated sexual battery. The state argues that simple assault is not a lesser included offense.

■■■ The trial judge has the duty to give a complete charge of the law applicable

to the facts of the case. *State v. Harbison,* 704 S.W.2d 314, 319 (Tenn.), *cert. denied,* 476 U.S. 1153, 106 S.Ct. 2261, 90 L.Ed.2d 705 (1986). It is settled law that when "there are any facts that are susceptible of inferring guilt on any lesser included offense or offenses, then there is a mandatory duty upon the trial judge to charge on such offense or offenses. Failure to do so denies a defendant his constitutional right of trial by a jury." *State v. Wright,* 618 S.W.2d 310, 315 (Tenn.Crim.App.1981) (citations omitted); Tenn.Code Ann. § 40–18–110. When there is a trial on a single charge of felony, there is also a trial on all lesser included offenses, "as the facts may be." *Strader v. State,* 210 Tenn. 669, 362 S.W.2d 224, 227 (1962).

▇▇▇ The state correctly points out that the test for determining a lesser included offense is whether one necessarily commits the lesser when committing the greater. *See State v. Layne,* 623 S.W.2d 629 (Tenn.Crim. App.1981). Yet, it misapplies the test.

Aggravated sexual battery is defined as "unlawful sexual contact with a victim by the defendant or the defendant by a victim...."[4] Tenn.Code Ann. § 39–13–504. Assault is committed when a person

(1) Intentionally, knowingly, or recklessly causes bodily injury to another;

(2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or

(3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative.

Tenn.Code Ann. § 39–13–101(a). In some instances, an attempt to commit aggravated sexual battery might cause a person to "fear imminent bodily injury." In most instances, the attempt would involve "extremely offensive or provocative touching." *See State v. Morris,* 788 S.W.2d 820 (Tenn.Crim.App. 1990).

▇▇▇ Trial courts are not required to charge the jury on a lesser included offense

when the record is devoid of evidence to support an inference of guilt of the lesser offense. *State v. Stephenson,* 878 S.W.2d 530 (Tenn.1994). Here, however, we find that the facts presented at trial were "susceptible to" a jury determination that the defendant's conduct was merely the type that "a reasonable person would regard ... as extremely offensive or provocative", rather than an attempt to make unlawful sexual contact. Thus, we hold that the trial court was obliged to charge the jury on simple assault as a lesser included offense. The conviction on count two must be reversed. The cause is remanded for a new trial.

### IV

The defendant's final claim is that his sentence is excessive. He asserts that the trial court improperly applied several enhancement factors, failed to consider mitigating factors, and erroneously ordered consecutive sentences. The state failed to properly brief this issue.

▇▇▇ When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review with a presumption that the determinations made by the trial court are correct. Tenn.Code Ann. § 40–35–401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn.1991). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7)

---

4. Prior to 1990, there was the separate offense of "assault with intent to commit or attempt to commit rape or sexual battery." Tenn.Code Ann. § 39–2–608 (1988 Supp.). After its repeal, annotations referred to Tenn.Code Ann. § 39–12–101, Criminal Attempt, and Tenn.Code Ann. § 39–13–101, Assault.

the defendant's potential for rehabilitation or treatment. Tenn.Code Ann. §§ 40–35–102, –103, and –210; *State v. Smith,* 735 S.W.2d 859, 862 (Tenn.Crim.App.1987).

In felony sentencing, the minimum sentence is presumed. Tenn.Code Ann. § 40–35–210(c). Because this presumption does not apply to misdemeanor sentencing, we will address the misdemeanor counts separately. *See State v. Bernell B. Lawson,* No. 63, 1991 WL 84071 (Tenn.Crim.App., Knoxville, May 23, 1991). The felony sentences include: counts four, five, seven, eight, twenty-two through thirty-one, thirty-eight, thirty-nine, forty-one, and forty-five through forty-nine.

■ The trial court found six enhancement factors and no mitigating factors applicable to the defendant. Yet, the factors were generally applied to the defendant rather than to specific offenses, as required by Tenn.Code Ann. § 40–35–210(f). Thus, we will conduct our *de novo* review without the statutory presumption of correctness. *State v. Ashby,* 823 S.W.2d at 169.

### *Felony Sentencing*

■ Initially, the defendant had a previous criminal history in excess of that necessary to establish the appropriate range. Tenn.Code Ann. § 40–35–114(1). And, while the defendant claims that he had only a single misdemeanor prior to his convictions on these charges, the offenses under review here may also qualify as a "prior criminal history."

■ Because three convictions have been reversed, the defendant now stands convicted of forty-six separate offenses; the unlawful acts occurred over an extended period of time prior to his trial. The date of the offense, not the date of the conviction, determines whether offenses can be used to enhance punishment. *See State v. Cummings,* 868 S.W.2d 661 (Tenn.Crim.App.1992). It is only when offenses are committed within twenty-four hours of each other in a single course of conduct that multiple offenses must be treated as one. *See* Tenn.Code Ann. § 40–35–107(b)(4). Moreover, the defendant's prior misdemeanor involved conduct of the same nature as his convictions here.

Thus, we hold that this factor was applicable to each of the defendant's offenses.

■ The trial court found that many of the offenses involved more than one victim. Tenn.Code Ann. § 40–35–114(3). And, while it is true that there were many times when the defendant had several young boys at "the shack" to view pornographic tapes and drink alcoholic beverages, he was convicted separately for each victim. Therefore, this enhancement factor was not applicable. *See State v. Lambert,* 741 S.W.2d 127 (Tenn. Crim.App.1987).

■ The trial court also found that some of the victims suffered emotional injuries that qualified as "particularly great." Tenn.Code Ann. § 40–35–114(6). The defendant claims that the record fails to support that finding. Our independent review demonstrates that at least two of the victims required counseling as a result of the defendant's actions. One of the two had been prescribed medication. This factor, therefore, was applicable to felony counts four and five.

The defendant takes issue with the last three enhancement factors, claiming that each is an essential element of the offense and cannot be used to enhance his sentences. *See* Tenn.Code Ann. § 40–35–114. We disagree.

■ The trial court found that many of the victims were particularly vulnerable because of their ages. Tenn.Code Ann. § 40–35–114(4). Though age is an essential element of many of the crimes for which the defendant was convicted, it does not make this factor inapplicable. "The vulnerability enhancement relates more to the natural physical and mental limitations of the victim than merely to the victim's age." *State v. Adams,* 864 S.W.2d 31 (Tenn.1993).

Here, some of the defendant's victims were especially young. Several did not have supportive home environments. Most looked to the defendant for friendship and approval. Misdemeanor convictions resulted from all of the charges where the record demonstrates that the victims were particularly vulnerable because of age. Thus, we find that while the factor was properly used to enhance the de-

fendant's misdemeanor sentences, there was insufficient proof of "vulnerability" for any of the felony convictions.

■ That the offenses were committed to gratify the defendant's desire for pleasure and excitement was also used to enhance the length of the sentences. Tenn.Code Ann. § 40–35–114(7). The defendant, however, claims that every sexual offense is necessarily done to gratify a desire for pleasure and excitement. We must disagree. Recently, our supreme court held that this factor can be applied in sex offense cases because many such offenses are committed for reasons other than pleasure or excitement, e.g., acts of violence or a desire for control. *State v. Adams,* 864 S.W.2d at 35. Here, it appears that each of the defendant's felonious acts was undertaken to gratify the defendant's desire for pleasure and excitement. Thus, we find the factor applicable to those felony offenses.

■ Finally, the trial court found that the defendant's sentence should be enhanced because he violated a position of private trust. Tenn.Code Ann. § 40–35–114(15). The defendant argues that almost every sexual offense against a minor involves an adult gaining the trust of the young victim and using that trust to take advantage of the victim; therefore, abuse of a private trust should be considered an essential element of the offense. That theory has been rejected by our supreme court. *See State v. Adams,* 864 S.W.2d at 34.

Here, the defendant developed a personal relationship with each of his victims. He paid for recreational activities, talked with them about their school activities, and bought them food. For many of the boys, he served as a father figure. After gaining their trust, the defendant abused many of the boys. He · further breached that trust by hiding his misconduct. Under these circumstances, we hold that the enhancement applies to each of the defendant's felony convictions.

The defendant also asserts that the trial court should have used two factors to mitigate his sentence. First, he claims that the trial court erred by refusing to find that his crimes neither threatened nor caused "seri-

ous bodily injury" to his victims. Tenn.Code Ann. § 40–35–113(1). All thirteen of the defendant's victims were minors. He furnished alcoholic beverages to some of them and, by various means, sexually abused most all of them. Under these circumstances, we cannot find that there was no threat of serious bodily injury.

■ Secondly, the defendant insists that the trial court should have taken into consideration the positive contributions he had made to his family and community. *See* Tenn.Code Ann. § 40–35–113. At the sentencing hearing, the defendant's sister stated that the defendant had been a father figure to her and had always provided financial assistance to his mother. She further stated that he had always been a hard worker. The defendant also had friends who testified on his behalf, explaining how he had helped them and young children in the community. The defendant would normally be due some favorable consideration based upon his family contributions and work ethic. Because, however, the "help" he provided to young people was improperly motivated, the factor is inapplicable here.

■ The trial court imposed a mid-range sentence for each of the defendant's felony convictions. We find that there were at least two enhancement factors applicable to each felony count. Other enhancement factors were also applicable to many of these convictions. No mitigating factors were applicable. When enhancement factors are present and no mitigating factors are applicable, "the court may set the sentence above the minimum, but still within the range." Tenn.Code Ann. § 40–35–210. Thus, we also find mid-range sentences to be warranted.

### Misdemeanor Sentencing

■ Counts one, three, six, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, eighteen, nineteen, twenty, twenty-one, thirty-two, thirty-three, thirty-four, thirty-five, thirty-six, forty, forty-two, forty-three, and fifty were misdemeanors. In each instance, the trial court imposed the maximum sentence.

As previously noted, the presumption of minimum sentence does not apply to misdemeanors. *See State v. Bernell B. Lawson,* No. 63 at 7. Still, the sentence must be consistent with the purposes and principles of the Criminal Sentencing Reform Act of 1989. Tenn.Code Ann. § 40–35–302(a) & (b). And, while the trial court is provided wide discretion, it must still consider any factors of enhancement or mitigation. *See* Tenn.Code Ann. § 40–35–302(d) & (f). The weight to be given to any applicable factors depends upon the nature and circumstances of the case. *State v. Moss,* 727 S.W.2d 229 (Tenn.1986).

For the reasons previously stated, there are at least two enhancement factors which are applicable to each misdemeanor conviction: (1) the defendant abused a position of trust and (2) the defendant had an extensive history of criminal convictions or behavior. In addition, each of the defendant's convictions for exhibiting pornography involve acts done "to gratify the defendant's desire for pleasure or excitement." Tenn.Code Ann. § 40–35–114(7). A limited number of these counts also involved victims who were particularly vulnerable because of their age and two experienced some emotional injury. Finally, none of the claimed mitigating factors were entitled to any weight. And, because there were no mitigating factors and the enhancement factors applicable to these sentences are based upon particularly reprehensible conduct ranging over an extended period of time, we concur in the imposition of maximum sentences for each misdemeanor.

### Consecutive Sentencing

We now turn to the issue of consecutive sentencing. Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in *Gray v. State,* 538 S.W.2d 391, 393 (Tenn. 1976). In that case, our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in *State v. Taylor,* 739 S.W.2d 227 (Tenn.1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. The 1989 act is, in essence, the codification of the holdings in *Gray* and *Taylor.* Consecutive sentencing may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria exists:

(1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn.Code Ann. § 40–35–115(b).

Despite the applicability of one of the preceding factors to a particular defendant, "consecutive sentences should not routinely be imposed ... and that the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved." *State v. Taylor,* 739 S.W.2d at 230. While this section permits consecutive sentencing, the trial judge has other available options, such as increasing the length of the

sentence within the appropriate range depending on the presence of enhancement factors.

The legislative purposes of sentencing include the imposition of a term in relation to the seriousness of the offense, confinement when necessary to avoid depreciating the seriousness of the crime, the provision of an effective deterrent to others, and the restraint of those with a long history of criminal conduct. An aim is to avoid inequalities for similar crimes and to impose the least severe measure.

Here, the defendant was found guilty of over forty sexual offenses against minor children. The record establishes that at least two of the victims suffered emotionally. The carefully planned seductions of the various victims intensified the severity of the offense.

Further, we find that the trial court prudently determined which of the sentences the defendant would serve consecutively. At least one of the sentences relating to each victim was ordered consecutive. On the other hand, where the defendant was convicted of more than one count of an offense involving the same victim, the trial court imposed only one consecutive sentence. Thus, we approve consecutive rather than concurrent sentences for a portion of the defendant's convictions. *See* Tenn.Code Ann. § 40–35–115(b)(5).

### Summary

The conviction as to count two is reversed. The cause is remanded. The convictions as to counts nine and ten are reversed and dismissed. The rape conviction in count forty-four is modified to statutory rape. All other convictions are affirmed. We have modified the sentences accordingly. An appendix is attached for analysis. The effective

sentence is adjudged at fifty-six years, six months less fourteen days.

JONES, J., and JOHN K. BYERS, Senior Judge, concur.

### APPENDIX

*Key*

1. EP = Exhibiting Pornography to a Minor

2. SB = Sexual Battery

3. S Rape = Statutory Rape

4. FA = Furnishing Alcohol to a Child

5. CD = Contributing to the Delinquency of a Minor

*Sentencing Ranges*

As a Range I offender, the defendant qualified for sentencing within the following ranges:

1. Felonies
   (a) Rape, 8–12 years on each count
   (b) Statutory Rape, 1–2 years on each count
   (c) Sexual Battery, 1–2 years on each count
2. Misdemeanors
   Assault, Exhibiting Pornography to a Minor, Furnishing Alcoholic Beverages to a Child, and Contributing to the Delinquency of a Minor, 0–11 months, 29 days on each count

*Group A*

Counts one, three through seven, eleven, twelve, fourteen through nineteen, twenty-two, twenty-three, thirty-two through thirty-four, thirty-eight through forty-five, and fifty are to be served consecutively. All remaining counts, listed in Group B, are to be served concurrently, both with each other and with the consecutive sentences.

| Count | | Applicable Enhancement Factors | | | | | | Sentence |
|---|---|---|---|---|---|---|---|---|
| | | 1 | 3 | 4 | 6 | 7 | 15 | |
| 1. | Assault | X | | | | X | X | 6 mo. |
| 3. | EP | X | | | | X | X | 11 mo., 29 days |
| 4. | Rape | X | | | X | X | X | 10 yrs. |
| 5. | SB | X | | | X | X | X | 1 yr., 6 mo. |
| 6. | EP | X | | | X | X | X | 11 mo., 29 days |

| Count | | Applicable Enhancement Factors | | | | | | Sentence |
|-------|---|---|---|---|---|---|---|----------|
| | | 1 | 3 | 4 | 6 | 7 | 15 | |
| 7. | S Rape | X | | | | X | X | 1 yr., 6 mo. |
| 11. | EP | X | | | | X | X | 11 mo., 29 days |
| 12. | Assault | X | | | | X | X | 6 mo. |
| 14. | FA | X | | | | | X | 11 mo., 29 days |
| 15. | EP | X | | | | X | X | 11 mo., 29 days |
| 16. | EP | X | | X | X | X | X | 11 mo., 29 days |
| 17. | FA | X | | X | X | | X | 11 mo., 29 days |
| 18. | Assault | X | | | | X | X | 6 mo. |
| 19. | EP | X | | | | X | X | 11 mo., 29 days |
| 22. | Rape | X | | | | X | X | 10 yrs. |
| 23. | SB | X | | | | X | X | 1 yr., 6 mo. |
| 32. | EP | X | | | | X | X | 11 mo., 29 days |
| 33. | EP | X | | | | X | X | 11 mo., 29 days |
| 34. | EP | X | | | | X | X | 11 mo., 29 days |
| 38. | SB | X | | | | X | X | 1 yr., 6 mo. |
| 39. | Rape | X | | | | X | X | 10 yrs. |
| 40. | Assault | X | | | | X | X | 6 mo. |
| 41. | S Rape | X | | | | X | X | 1 yr., 6 mo. |
| 42. | EP | X | | | | X | X | 11 mo., 29 days |
| 43. | CD | X | | | | | X | 11 mo., 29 days |
| 44. | S Rape | X | | | | X | X | 1 yr., 6 mo. |
| 45. | S Rape | X | | | | X | X | 1 yr., 6 mo. |
| 50. | EP | X | | X | | X | X | 11 mo., 29 days |

| | Effective Sentence Group A | 56 yrs., 6 mos. less 14 days |
|---|---|---|

Group B

| Count | | Applicable Enhancement Factors | | | | | | Sentence |
|-------|---|---|---|---|---|---|---|----------|
| | | 1 | 3 | 4 | 6 | 7 | 15 | |
| 8. | S Rape | X | | | | | X | 1 yr., 6 mo. |
| 13. | Assault | X | | | | | X | 11 mo., 29 days |
| 20. | EP | X | | | | | X | 11 mo., 29 days |
| 21. | EP | X | | | | | X | 11 mo., 29 days |
| 24. | Rape | X | | | | | X | 10 yrs. |
| 25. | SB | X | | | | | X | 1 yr., 6 mo. |
| 26. | Rape | X | | | | | X | 10 yrs. |
| 27. | SB | X | | | | | X | 1 yr., 6 mo. |
| 28. | Rape | X | | | | | X | 10 yrs. |
| 29. | SB | X | | | | | X | 1 yr., 6 mo. |
| 30. | Rape | X | | | | | X | 10 yrs. |
| 31. | SB | X | | | | | X | 1 yr., 6 mo. |
| 35. | EP | X | | | | | X | 11 mo., 29 days |
| 36. | EP | X | | | | | X | 11 mo., 29 days |
| 46. | S Rape | X | | | | | X | 1 yr., 6 mo. |
| 47. | S Rape | X | | | | | X | 1 yr., 6 mo. |
| 48. | S Rape | X | | | | | X | 1 yr., 6 mo. |
| 49. | S Rape | X | | | | | X | 1 yr., 6 mo. |

Effective Sentence                              10 yrs.
Group B
(Concurrent with
Group A)

TOTAL EFFECTIVE SENTENCE        56 yrs., 6 mos.
                                                 less 14 days