# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

## DECEMBER 1999 SESSION

**FILED**

**March 6, 2000**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | * | No. W1999-00009-CCA-R3-CD |
| Appellee, | * | HAYWOOD COUNTY |
| VS. | * | Honorable Bobby H. Capers, Judge |
| **WILLIAM PADILLA,** | * | (Rape of a Child) |
| Appellant. | * | |

FOR THE APPELLANT:

MARK JOHNSON
124 East Court Square
Trenton, TN 38302

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General & Reporter

CLINTON J. MORGAN
Counsel for the State
425 Fifth Avenue North
Nashville, TN 37243

CLAYBURN L. PEEPLES
District Attorney General
109 East First Street
Trenton, TN 38382

OPINION FILED: _____

**AFFIRMED**

**JOHN EVERETT WILLIAMS,**
Judge

## OPINION

### INTRODUCTION

The defendant, William Padilla, appeals from his Haywood County jury conviction of one count of rape of a child. The defendant received 25 years, the

maximum sentence for a Range I standard offender. He appeals this conviction and sentence, arguing that:

(1) The evidence was insufficient to support the jury's verdict; and

(2) the sentence was excessive.

After careful review, we AFFIRM the judgment and sentence from the trial court.

## FACTS

We set forth many of the relevant facts later in our analysis and, therefore, provide only an outline here. On February 24, 1997, the defendant, a friend of the victim's family, stopped by their family business, the Bait Shop in Brownsville, Tennessee. He volunteered to pick up a new heater for the shop and asked if their four year-old daughter could go with him. This request was not unusual, as the victim had accompanied the defendant on three or four previous trips.

The defendant and the victim left in the defendant's truck. Rather than getting a heater, however, the defendant took the victim to a house located on Poplar Corner Road in Brownsville. There, he sexually assaulted the victim. He stole a heater from the residence and arrived at the Bait Shop with the victim approximately one and one-half hours after their departure. At the shop, the victim made comments suggestive of sexual abuse, but the aunt did not comprehend their meaning.

The next morning, the victim reported the sexual assault to her aunt who contacted the police and filed a report. The defendant was arrested on a warrant and later charged.

At trial, the jury heard the testimony of, among others, the victim, the aunt, an investigator, and various medical personnel. The defendant did not testify. The jury convicted the defendant of one count of rape of a child.

The trial court then held a sentencing hearing, where the trial judge sentenced the defendant to 25 years, the maximum sentence. From this conviction and sentencing the defendant now appeals.

**ANALYSIS**

**Sufficiency of the Evidence**

The defendant first argues that the evidence was insufficient to support the jury's verdict. Specifically, he argues that the evidence adduced at trial is insufficient to prove "sexual penetration" within the meaning of Tennessee Code Annotated § 39-13-501(7).

When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." See Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. See State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this Court neither reweighs or reevaluates the evidence. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. See Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). To the contrary, this Court affords the state the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences which may be drawn from the evidence. See State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact, not this Court. Id. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), the Tennessee Supreme Court stated, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Because a verdict of guilty removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden of illustrating to

this Court why the evidence is insufficient to support the verdict returned by the trier of fact.  See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

In this case, the crux of the defendant's sufficiency claim relates to the proof of "penetration" offered by the state.  That is, the defendant claims that the proof at trial relating to penetration was insufficient for the jury to conclude that penetration actually occurred.  Accordingly, he argues that the proof at best  establishes sexual abuse or aggravated sexual assault.[1]  Having reviewed the transcript as well as the defendant's arguments, we disagree.  While the evidence at trial establishing penetration was not overwhelming, the following relevant proof sufficiently supported the verdict.

The victim testified that the defendant took her back to a house where he "licked her cootie" and stuck his "weenie in her."[2]  She said it felt hard and that it went in about half of an inch.  At the time, she said she was lying down on the couch.  She then saw "pee" coming out of his "weenie."[3]

Brownsville Police Department Officer Blackburn testified that he took the victim to the police department on the morning of February 25 and notified Child Services.  The child's clothes, blanket, a sheet, and blood taken from the defendant were analyzed.  The blanket and the sheet came from the house at 3635 Poplar Corner.  A forensic scientist testified that she found semen on the victim's panties and the sheet.  DNA tests later confirmed that the semen profiles matched the defendant.

Mary Burns, the owner of the residence at 3635 Poplar Corner, testified that her son had given the defendant keys to the house.  Further, she explained that on

---

[1] Having reviewed the entire record, this Court agrees with the defendant's apparent concession that sufficient evidence existed to support a finding of sexual assault or aggravated sexual assault.  The child's testimony, along with very convincing physical and medical evidence, established a sexual assault or aggravated sexual assault.

[2] The victim refers to her vagina as "cootie" and the defendant's penis as "weenie."

[3] Testimony and physical evidence established that this reference describes the defendant's ejaculation.

February 28 she noticed that the couch was disheveled, food was missing,[4] and the heater was missing.

Finally, the state offered testimony of Susan Hamm, the Direct Supervisor at Child Services, and Cathy Cobb, a counselor at Pathways. Both testified that the victim had described the sexual acts to them and identified the defendant as the perpetrator.

Upon this testimony, the jury returned a verdict of guilty. However, the defendant contends that certain evidence he introduced preponderates against this finding.[5] Specifically, the defendant makes much of Dr. Durham's testimony;[6] in relevant part:

> STATE: Assuming that [the victim] testified that in her estimation she was penetrated a half an inch by – by the defendant, in your opinion would that indicate that his penis had made contact with her hymen?
> DR. DURHAM: It may have.
> STATE: Would that be about – in your opinion, would that be consistent with pushing against the hymen?
> DR. DURHAM: Yes.
> STATE: And would that be consistent with the length or the distance you would have to go to get through the labia and into the vaginal opening?
> DR. DURHAM: Yes.
> STATE: Now as I understand, you are not purporting to offer this jury an opinion as to whether the child was or was not sexually molested in someway.
> DR. DURHAM: Correct.
> STATE: You're just saying that her hymen was intact?
> DR. DURHAM: Correct.
> STATE: And there still could have been a half inch of penetration as the child described?
> DR. DURHAM: Correct.
> STATE: And left her hymen intact?
> DR. DURHAM: I, just would say I didn't see any evidence – physical evidence.

While this testimony does not bolster the victim's report of penetration, the testimony is not inconsistent with the victim's testimony. Instead, the testimony supports a reasonable inference that penetration occurred but the hymen was not torn. Such penetration still satisfies the statutory requirement:

---

[4] Testimony established that the victim had eaten certain foods while at the Poplar Corner residence, notably, the exact foods described by Burns.
[5] In fact, the defendant also questions the victim's credibility. The matter of credibility is essentially for the jury. The trier of fact was in the best position to observe this victim's testimony, mannerisms, and credibility.
[6] Dr. Durham was the examining doctor on Child Services' referral.

> "Sexual penetration" means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required.

Tenn. Code Ann. § 39-13-501(7). This inference is supported by the victim's testimony, was adopted by the jury, and now must be affirmed. The defendant has simply not carried his burden on this issue.

## Sentencing

The defendant next challenges the length of his sentence. He argues that the trial court failed to properly consider enhancement factors and erred in imposing the maximum sentence within the range.

This Court's review of the sentence imposed by the trial court is de novo with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. See State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, no presumption of correctness exists, and our review is de novo. See State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d) sentencing comm'n. comments. In conducting our review, we are required, pursuant to Tennessee Code Annotated § 40-35-210, to consider the following factors in sentencing:

> (1) [t]he evidence, if any, received at the trial and the sentencing hearing;
> (2) [t]he presentence report;
> (3) [t]he principles of sentencing and arguments as to sentencing alternatives;
> (4) [t]he nature and characteristics of the criminal conduct involved;
> (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and
> (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

If no mitigating or enhancement factors for sentencing are present, Tennessee Code Annotated § 40-35-210(c) provides that the presumptive sentence shall be the minimum sentence within the applicable range. See State v. Lavender,

967 S.W.2d 803, 806 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors do exist, a trial court should start at the minimum sentence, enhance the minimum sentence within the range for enhancement factors, and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court if that court complies with the purposes and principles of the sentencing act and if its findings are supported by the record. See State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Leggs, 955 S.W.2d 845, 848 (Tenn. Crim. App. 1997); State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995); see Tenn. Code Ann. § 40-35-210 sentencing comm'n. comments. Nevertheless, should only enhancement factors be present, a trial court may set the sentence above the minimum within the range. See Tenn. Code Ann. § 40-35-210(d); see Lavender, 967 S.W.2d at 806; Manning v. State, 883 S.W.2d 635, 638 (Tenn. Crim. App. 1994).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after giving due consideration and proper weight to the factors and principles set out under sentencing law, and if the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. See Fletcher, 805 S.W.2d at 789.

In this case, we find that the trial court's sentence is not entitled to the presumption of correctness; the trial court erred because "particular vulnerability," regarding the victim, was an element of the offense. Nothing indicated that any particular vulnerability became relevant in the commission of the offense. See State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993). Our review is therefore de novo.

We begin with 20 years, the midpoint within the applicable range. See Tenn. Code Ann. §40-35-112, -210(c). Regarding enhancing factors, we find that the record supports the application of factor (1): criminal history beyond that necessary to establish the range. To support application of this factor, a defendant's criminal history need not be extensive; accordingly, this defendant's prior convictions for a

Class D felony and a Class E felony are sufficient.  <u>See</u> Tenn. Code Ann. § 40-35-114(1).

Next, we find that the record supports the application of factor (15): abuse of trust.  In this case, the defendant, a family friend, used this friendship to obtain permission to take the victim with him.  By virtue of his pre-existing relationship with the family and familiarity to the victim, he was so trusted.[7]  Accordingly, we find that the defendant abused his position of private trust in commission of this offense. <u>See</u> <u>State v. McKnight</u>, 900 S.W.2d 36, 55 (Tenn. Crim. App. 1994).

As for mitigating factors, the trial court found none.  Having reviewed the record, we agree.  Weighing the enhancement factors in accordance with the appropriate sentencing principles, we accord some weight to factor (1) and great weight to factor (15).  Accordingly, and after reviewing similar cases and their sentences, we affirm the sentence of 25 years.

## CONCLUSION

Accordingly, we AFFIRM the judgment and sentence from the trial court.

_____
JOHN EVERETT WILLIAMS, Judge

CONCUR:

_____
GARY R. WADE, Presiding Judge

---

7 We note also that the victim even had a nickname for Padilla: "Boody Boy."  He had been trusted with her care before on similar errands and apparently had established some degree of friendship and affection with the victim in addition to trust with the family.

_____
NORMA McGEE OGLE, Judge