IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 1, 2005 Session

STATE OF TENNESSEE v. BARBARA ANN BRYANT
a/k/a BARBARA ANN FAYNE

Appeal from the Circuit Court for Tipton County
No. 4713     Joseph H. Walker, Judge

No. W2004-01245-CCA-R3-CD  - Filed April 1, 2005

The defendant, Barbara Ann Bryant, appeals the sentencing judgment of the Tipton County Circuit Court, which resulted in an effective 33-year incarcerative sentence for vehicular homicide and vehicular assault.  We affirm.

**Tenn. R. App. P. 3; Judgments of the Circuit Court are Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

Frank Deslauriers, Covington, Tennessee, for the Appellant, Barbara Ann Bryant a/k/a Barbara Ann Fayne.

Paul G. Summers, Attorney General & Reporter; David E. Coenen, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Colin Campbell, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On April 14, 2004, the defendant submitted an open guilty plea to three counts of vehicular homicide based on intoxication, one count of vehicular assault, and two counts of driving while intoxicated.  Following a sentencing hearing, the trial court sentenced the defendant to standard offender, Department of Correction terms of ten years for each homicide and of three years for vehicular assault.  The trial court merged the convictions of driving while intoxicated into the first conviction count of vehicular homicide.  The court imposed the sentences to run con- secutively, creating an effective incarcerative sentence of 33 years.

The convictions resulted from the October 10, 2003, Highway 51 accident in which the defendant, whose blood-alcohol content was .27 percent, collided her car into a pair of motorcycles being ridden by the four victims.  In the accident, John Wesley Sanders, Sr., the only

surviving motorcyclist and thus the victim of the vehicular assault conviction, lost his wife, daughter, and son-in-law.

At the sentencing hearing, Mr. Sanders testified that, as a result of the collision, two bones in his leg were broken, and his ankle was crushed. He had undergone three surgeries to insert plates and screws and faced the possibility of further surgeries. Mr. Sanders testified that his personal loss of family members was extremely grievous and that the loss to the community was substantial – two of the deceased victims were nurses and the third was a fireman. Mr. Sanders' daughter and son-in-law who were vehicular homicide victims left behind three children and two grandchildren. He explained the difficulty experienced by the children and grandchildren.

Michael Gill, 24 years of age, testified that his wife lost her parents in the accident and that the Gills were taking care of the children left behind.

The defendant, 38 years of age and mother of four children, testified that in 2003 she maintained three jobs. She testified that she did not remember the accident but knew that she was "extremely drunk that day." The defendant testified that she had not eaten for three or four days prior to the accident and had drunk some beer and gin after getting off from work shortly after noon. Later, she went to the home of her "Avon lady" to pay a bill because the lady was "worrying [her] about the money." The accident occurred after the defendant left the Avon lady's house. Later, the defendant talked to the Avon lady and acknowledged at the hearing that the lady "said [she] tried to stop me from driving, and I don't even remember that."

The presentence report established that the defendant had been previously convicted in 1998 of misdemeanor child abuse, in 1997 of driving without a license, and in 1987 of shoplifting.

The trial court enhanced the length of the defendant's sentences by considering the defendant's prior criminal history, that the offenses involved more that one victim, and that the defendant committed the offense without hesitation when the risk to human life was high. *See* Tenn. Code Ann. § 40-35-114(2), (4), (11) (2003). With respect to the vehicular assault, the court applied the enhancement factor that the victim's personal injuries were particularly great. *Id.* § 40-35-114(7). In mitigation, the court found only that the defendant was remorseful for the deaths and injuries she caused. *See id.* § 40-35-113(13). Based upon the enhancement factors far outweighing the mitigating factor, the court imposed a sentence of ten years in each vehicular homicide case and of three years in the vehicular assault case. Based upon its finding that the defendant had an extensive record of criminal activity and that she was a dangerous offender, the court ordered consecutive sentencing.

On appeal, the defendant claims that the length of each vehicular homicide sentence is excessive and that the trial court erred in imposing the sentences to run consecutively. We disagree.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. *Id.* § 40-35-401(d) (2003). This presumption is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the defendant. *Id.* In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo*. *Id.* If appellate review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The defendant's Range I, ten-year sentence in each of the Class B felony vehicular homicide convictions is a mid-range sentence, exceeding the eight-year presumptive sentence by two years. *See* Tenn. Code Ann. § 40-35-112(a)(2) (2003) (establishing Range I, Class B felony sentences at eight to 12 years). The Range I, three-year sentence in the Class D felony vehicular assault conviction is a mid-range sentence, exceeding the two-year presumptive sentence by one year. *Id.* § 40-35-112(a)(4) (establishing Range I, Class D felony sentences at two to four years); *id.* § 40-35-210(c) (providing that the presumptive sentence for Class B, C, D, and E felonies "shall be the minimum sentence in the range").

At the threshold, we notice that the defendant, as the appellant, has not included in the record on appeal the transcript of the defendant's plea submission hearing. "Failure to include the transcript of the guilty plea hearing in the record prohibits this Court's conducting a full *de novo* review of the sentence under Tennessee Code Annotated section 40-35-210(b)." *State v. Quincy Alexander Norman*, No. W2003-00635-CCA-R3-CD, slip. op. at 4 (Tenn. Crim. App., Jackson, Aug. 4, 2004). Typically, the result of an appellant's failure to include in the record a fair and complete account of the happenings in the trial court that form the bases of appeal results in the appellate court presuming the correctness of the trial court's determination. *State v. Keen*, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999); *see* Tenn. R. App. P. 24(g).[1]

Furthermore, we point out that the defendant's complaints about the length of each vehicular homicide conviction seem to focus upon the trial court's weighing of the enhancement and mitigating factors. It is well settled that the "weight afforded to enhancement and mitigating factors

---

[1]At least one issue in the present case reminds us of the reason for this rule. On the issue of whether enhancement factor (11), that the defendant had no hesitation about committing the offense when the risk to human life was high, was properly applied, the trial court relied upon the presence of vehicles other than the victims' and the defendant being on Highway 51 at the time of the accident. Although the prosecutor tried to elicit testimony from the defendant at the sentencing hearing that Highway 51 was congested with "barbecue" traffic at the time of the accident, he failed. Consequently, testimony of that nature was not presented through any witness at the sentencing hearing; however, we do not know what evidence about congestion on Highway 51 may have been presented at the plea submission hearing. *See* Tenn. R. Crim. P. 11(f) (requiring court to which guilty plea is submitted to determine accuracy of plea by assuring a "factual basis for the plea").

is left to the trial court's discretion." *State v. Souder*, 105 S.W.3d 602, 606 (Tenn. Crim. App. 2002).

That said, we believe the appellate record before us *is* adequate for us to conclude that enhancement factor (4), that the offense involved more than one victim, was erroneously applied. The defendant was convicted of an offense with respect to each person victimized by her actions. In such a situation, factor (4) is inapplicable. *State v. McKnight*, 900 S.W.2d 36, 54 (Tenn. Crim. App. 1994). Although this enhancement factor was apparently inapt in the present case, we nevertheless conclude that the remaining enhancement factors justify enhancement of the sentence to the mid-range level. Based upon the record before us, we discern no abuse of discretion in weighing the applicable factors.[2]

In the defendant's second issue, she argues that the trial court erred in imposing consecutive sentences. Consecutive sentencing may be imposed when the trial court determines that one or more of the following criteria exist:

> (1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and

---

[2]At this juncture, we point out that, at the oral argument of this case, the question was raised whether the defendant intended to make any claim based upon the right to jury fact-finding in criminal sentencing as elucidated in *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531 (2004). Defense counsel acknowledged that the sentencing hearing occurred after the filing of *Blakely* and explained that the defendant declined to raise a *Blakely* issue because it was in her best interests in avoiding a maximum sentence to eschew any claim to jury fact-finding or sentencing.

-4-

the extent of the residual, physical and mental damage to the victim or victims;

> (6) The defendant is sentenced for an offense committed while on probation;  or

> (7) The defendant is sentenced for criminal contempt.

Tenn. Code  Ann. § 40-35-115(b) (2003).  In *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995), the supreme court imposed two additional requirements for consecutive sentencing when the "dangerour offender" category is used – the court must find consecutive sentences are reasonably related to the severity of the offenses committed and are necessary to protect the public from further criminal conduct.  *Id.* at 937-38.

The defendant posits that her criminal record is not egregious enough to support a finding of a record of extensive criminal activity, *see* Tenn. Code Ann. § 40-35-115(b)(2) (2003), and that the finding that the defendant is a dangerous offender is undermined by her lack of *mens rea* in committing the offenses.  On the latter point, she argues that her lack of memory of the events leading up to the accident and of the accident itself belies that she was aware of the risk to other people that her drunken driving posed.

We hold that the finding that the defendant is a dangerous offender is apt and is sufficient to support an order of consecutive sentencing.  *Wilkerson* provides a good illustration why the record in the present case supports a dangerous-offender finding.  In *Wilkerson*, the 27-year-old, law-student defendant had no prior criminal record other than a driving-under-the-influence conviction.   When intoxicated, he caused a head-on collision on Highway 51 in Dyer County. *Wilkerson*, 905 S.W.2d at 937.  The resulting death and injuries became the bases for the defendant's guilty-pleaded convictions of vehicular homicide and vehicular assault.  *Id.*  Based upon the dangerous offender rubric of Code section 40-35-115(b), the trial court in *Wilkerson* imposed the sentence for vehicular homicide to be served consecutively with the effective sentence for vehicular assault.  *Id.*  On appeal, Wilkerson claimed the trial court erred in finding him a dangerous offender.  Specifically, he argued that the state had not shown the culpability implicit in the required finding that "he had *no hesitation* about committing a crime in which the risk to human life is high."  *See id.*  (Emphasis added).

Our supreme court disagreed, stating that " '[l]ack of hesitation' is semantically close to 'reckless indifference' and signifies a conscious lack of concern for foreseeable consequences." *Id.* at 937-38.  The court quoted favorably its own statement from *State v. Jones*, 883 S.W.2d 597 (Tenn. 1994): "As a practical matter, hesitation or lack of hesitation does not submit readily to proof because of its subjective nature.  The more logical interpretation of this enhancement factor places the emphasis on 'risk to human life was high.'" *Wilkerson*, 905 S.W.2d at 937. The high court concluded that Wilkerson's

conduct in this case demonstrated an indifference to the high probability of calamitous consequences to himself and the motorists whom he was certain to encounter as he drove in the wrong direction on a heavily travelled divided highway while intoxicated. He created a high risk of death or serious bodily injury to every motorist on that road. Death or serious bodily injury was almost inevitable. His conduct clearly satisfies the condition stated in Tenn[essee] Code Ann[otated] section 40-35-115(b)(4) and defines the defendant as a dangerous offender.

*Id.*

We believe the present defendant's culpability as a dangerous offender is akin to that of the defendant in *Wilkerson*. Despite the remonstrations of the Avon lady that the defendant not drive in her drunken state, the defendant drove on Highway 51 with a blood alcohol content of .27 percent, an extremely high amount. Accepting our supreme court's bidding to emphasize the "risk to human life" and not the defendant's hesitation to offend – or the lack thereof – we conclude that the trial court had an adequate basis for finding that the defendant was a dangerous offender.[3]

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

---

[3] To support the use of the dangerous-offender basis for consecutive sentencing, the trial court made the findings required by *Wilkerson*. *See Wilkerson*, 905 S.W.2d at 938-39.