IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 10, 2009

## STATE OF TENNESSEE v. RONALD LEE STEWART

**Direct Appeal from the Circuit Court for Marshall County**
**No. 17599     Robert Crigler, Judge**

---

**No. M2008-00337-CCA-R3-CD - Filed May 21, 2010**

---

A Marshall County Circuit Court Jury found the appellant, Ronald Lee Stewart, guilty of aggravated burglary, theft, and vandalism. The trial court sentenced the appellant as a Range III persistent offender to a total effective sentence of thirteen years in the Tennessee Department of Correction. On appeal, the appellant argues that his convictions "violate[] the Sixth Amendment because of juror fatigue" and that the trial court erroneously found him to be a persistent offender. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and J.C. MCLIN, JJ., joined.

Christopher P. Westmoreland, Shelbyville, Tennessee, for the appellant, Ronald Lee Stewart.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Charles Crawford, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

At the appellant's trial, the victim, Gary O'Neal, testified that he lived at 5210 Reynolds Road in Marshall County. He said that he had neighbors, the Blockers, who lived approximately 700 feet from his mobile home. O'Neal said the Blockers had a son, the appellant, who lived with them.

O'Neal recalled that approximately two weeks before the beginning of April 2007, the appellant stopped by O'Neal's garage and asked to borrow a sledge hammer. While the appellant was there, he and O'Neal talked about guns. O'Neal told the appellant that he had recently bought a couple of guns and that he might want a couple more. The appellant told O'Neal that he knew someone who might have guns for sale.

At 4:30 p.m. on April 2, 2007, O'Neal, a Roadway truck driver, left his home for an overnight trip. He returned home around 7:00 a.m. the next morning. O'Neal stated that he lived alone and that he did not give anyone permission to be in his residence while he was gone.

O'Neal stated that upon his return home, he noticed that the side door to his residence had been forcibly entered. The door was slightly ajar, and there were marks and dents where the door had been pried open. O'Neal walked through the house and saw that his bedroom was ransacked and the closet door was open. A small, fireproof safe which was in the closet had been partially pried out of the closet floor, and the lock had been shot and pried open. O'Neal saw shell casings in the floor near the safe. O'Neal said concrete, which had been in the bottom of the safe, was strewn about the bedroom floor. O'Neal noticed that a Titan .25 caliber semiautomatic pistol and another .25 caliber semiautomatic pistol were missing from the safe. He later discovered that a third gun, a Kel-Tec .380 caliber semiautomatic pistol which he kept on the nightstand, was also missing. O'Neal said the shell casings on the floor were from .380 caliber rounds. Additionally, some prescription hydrocodone pills were missing from his kitchen cabinet. O'Neal stated that the value of the guns, the safe, and the pills was under $500. Outside the house, O'Neal saw a "bar to [his] tire changer," which he normally kept under the awning of an outdoor shed. The bar was in his side yard seventy-five to one hundred feet from the residence's damaged side door. Upon discovering the burglary, O'Neal called the sheriff's department. When deputies arrived, O'Neal showed them the damage to the residence and described the missing items. The deputies investigated for an hour or two then left.

O'Neal said that at 9:00 p.m. that evening, he received a call from a man who was trying to disguise his voice. During the very short conversation, the male caller told O'Neal that his guns were at the Flat Creek Bridge, which was located one to one and one-half miles from O'Neal's residence. O'Neal testified that he had a caller identification service through his telephone provider, United Telephone Company, but the caller identification device registered the caller as "unknown." O'Neal drove to the bridge, but he did not see his guns and returned home.

Later, at approximately 11:00 p.m., O'Neal was talking on the telephone with a friend when his call waiting indicated he was receiving another call. O'Neal tried to connect to the

new call but was disconnected. One to two minutes later, the telephone rang again. A female caller told O'Neal that his guns were by the steps of the church near his residence. O'Neal told the caller he would get the guns in the morning because he was not going out in the middle of the night, and he hung up the telephone. However, he became concerned that someone would find the guns, two of which were loaded, so he drove to the church. He found the guns in a plastic bag near the church steps. Upon his return home, O'Neal called the sheriff's department to report that he had recovered his guns, and he was told that a deputy would call him the next morning.

When the deputy called on the morning of April 4, 2007, he told O'Neal that because of the recent rains, the guns had likely been wet and had probably been wiped clean. He told O'Neal to just put the guns away. O'Neal noticed that although two of the guns had been loaded when they were stolen, all of the guns were empty when he recovered them.

Tommy Welch, an information system administrator for United Telephone Company, testified that on the night of April 2, 2007, O'Neal received three calls, one at 9:05 p.m. and two near 11:00 p.m., from a cellular telephone with the telephone number of (931) 698-8355.

Erol Agaoglu, a deputy with the Williamson County Sheriff's Department, testified that on March 20, 2007, he had an encounter with the appellant. During that encounter, the appellant told Deputy Agaoglu that his telephone number was (931) 698-8355.

Deputy Lindsey Cook with the Marshall County Sheriff's Department testified that on April 3, 2007, he reported to O'Neal's residence to investigate a burglary complaint. Deputy Cook observed that the side door to the residence appeared to have been pried open. Inside O'Neal's bedroom, Deputy Cook saw a "very damaged" safe, with concrete on the floor around it. The lock on the safe had been shot, and there were bullet fragments on the floor near the safe.

Marshall County Sheriff's Detective Bob Johnson testified that on April 3, 2007, he arrived at O'Neal's residence at the same time as Captain Norman Dalton. Detective Johnson saw that the side door of the residence was pushed or kicked in, and he determined the door was the point of entry. Inside the residence, Detective Johnson observed bullet fragments and concrete around the damaged safe. Detective Johnson said that outside the residence, about twenty yards from the damaged side door, he saw a long bar which was used to change tires. He concluded that the bar had been used to pry open the residence door and/or the safe. He said he looked for fingerprints on the bar, the safe, and the door; however, no usable fingerprints were discovered.

Detective Bart Fagan testified that on April 4, 2007, he went to O'Neal's residence to try to obtain fingerprints from the guns O'Neal retrieved after the burglary. However, he was unable to find any usable fingerprints and opined that the guns may have been wiped clean.

Detective Captain Norman Dalton testified that on April 3, 2007, he went to O'Neal's residence to investigate a report of a burglary. Captain Dalton saw that a door to the residence had been pried open. In the bedroom, Captain Dalton observed concrete from the damaged safe, clothes, and hangers all over the floor. O'Neal informed Captain Dalton about his missing guns and medication.

Captain Dalton went to the Blockers' residence to see if they knew anything about the break-in, but no one answered when he knocked. Later that afternoon, Captain Dalton returned to the Blockers' residence. He encountered the appellant and his mother, Cathy Blocker, in the yard. Captain Dalton asked them about the burglary, and they denied any knowledge of the crime. Captain Dalton told Mrs. Blocker, within the appellant's hearing, that the appellant was a possible suspect, and he emphasized that he was concerned someone could get hurt with the missing guns. He implored Mrs. Blocker to help police.

Captain Dalton said that after he retrieved information from United Telephone Company, he spoke with Mr. Odell Blocker, the appellant's stepfather, and learned that the appellant's cellular telephone number was (931) 698-8355, the same number from which three calls to O'Neal were made on the night of April 3, 2007, after the burglary. Additionally, Mrs. Blocker told Captain Dalton how O'Neal's guns came to be at the church. Unbeknownst to Mrs. Blocker, Captain Dalton made an audiotape recording of that conversation.

Bernis Odell Blocker testified that in April 2007, he and his wife lived with the appellant, the appellant's girlfriend, and the appellant's five-year-old son. Mr. Blocker stated that he gave Captain Dalton the appellant's cellular telephone number.

Cathy Blocker testified that O'Neal lived two houses to the left of her. She recalled that on April 3, 2007, she and the appellant spoke with Captain Dalton in her front yard. Captain Dalton told them that O'Neal's residence had been burglarized and that guns were stolen. Captain Dalton expressed concern about the guns "falling into the wrong hands" and asked for Mrs. Blocker's help recovering the guns.

Mrs. Blocker stated that she was not with the appellant when the first call was made to O'Neal on the night of April 3, 2007. However, the appellant called O'Neal twice more and handed the telephone to her, instructing her to tell O'Neal his guns were by the church

steps. Mrs. Blocker acknowledged that at first she tried to "cover for" the appellant by telling Captain Dalton during the tape recorded conversation that she took the guns to the church. She maintained that when she spoke with Captain Dalton, she "was so messed up [she] didn't know what [she] was saying." She later averred that, although she did not witness it, she believed the appellant took O'Neal's guns to the church.

Based upon the foregoing evidence, the jury found the appellant guilty of aggravated burglary, a Class C felony; theft of property under $500, a Class A misdemeanor; and vandalism of property under $500, a Class A misdemeanor. At the sentencing hearing, the trial court determined that the appellant was a Range III persistent offender and sentenced him to concurrent sentences of thirteen years for the felony conviction and eleven months and twenty-nine days for each misdemeanor conviction.

## II. Analysis

### A. Juror Fatigue

The appellant's first issue on appeal is whether his "conviction[s] violate[] the Sixth Amendment because of juror fatigue." As a factual basis for his contention, the appellant asserts that during the course of trial, one juror reported to the trial court that she was tired. She explained that she had worked a twelve-hour shift the night before trial and was scheduled to work again the night of trial. The juror told the trial court that she did not inform her employer of her jury duty because she had just started the job and did not want to get in trouble for missing work. The juror stated that she could serve on the jury until 5:00 p.m. and sleep for a short while before going to work that evening. The court stated that it would call the juror's employer to intercede on her behalf. The trial court asked defense counsel if he had any questions for the juror, and he replied, "Your Honor, I have no questions." With no objection from either side, the trial proceeded.

Although the appellant raised only the issue of the sufficiency of the evidence in his motion for new trial, during the hearing on the motion he attempted to make an oral amendment to include complaints about sentencing and "juror fatigue." The trial court denied the motion for new trial, including the issues raised for the first time at the hearing. The record does not reflect that the oral amendments were ever reduced to writing. On appeal, the appellant raises the issue of "juror fatigue" but does not respond to the State's contention that the issue is waived for failure to properly include the issue in the motion for new trial.

-5-

Failure to raise an issue of error, other than sufficiency of the evidence or sentencing, in a motion for a new trial waives that issue for purposes of appellate review. See Tenn. R. App. P. 3(e). Rule 33(b) of the Tennessee Rules of Criminal Procedure provides:

> A motion for a new trial shall be in writing or, if made orally in open court, be reduced to writing, within thirty days of the date the order of sentence is entered. The court shall liberally grant motions to amend the motion for new trial until the day of the hearing on the motion for a new trial.

This court has previously stated that a defendant's failure to reduce an oral amendment to writing within thirty days of the entry of the sentencing order waives the issue. See State v. Mark C. Noles, No. M2006-01534-CCA-R3-CD, 2007 WL 3274422, at *11 (Tenn. Crim. App. at Nashville, Nov. 6, 2007); State v. Ronnie Watson, No. W2001-03084-CCA-R3-CD, 2002 WL 31258011, at **1-2 (Tenn. Crim. App. at Jackson, Sept. 16, 2002); State v. Christopher D. Lanier, No. W2001-00379-CCA-R3-CD, 2002 WL 1482712, at *4 (Tenn. Crim. App. at Jackson, Feb. 1, 2002). Moreover, the appellant also waived this issue at trial by failing to object, even when given the opportunity by the trial court. See Tenn. R. App. P. 36(a) (providing that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error"). Accordingly, we will not address this issue on appeal.

## B. Sentencing

The appellant contends that the trial court incorrectly found him to be a Range III persistent offender. Appellate review of the length, range or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d) (2006). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210 (2006); see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts

and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

The appellant contends that in determining his sentencing range, the trial court examined his past felony record, which consisted of thirteen prior Class E felony forgery convictions. The forgery offenses occurred between June 7, 1999, and July 23, 1999. The appellant contends that "for the purposes of determining the appropriate range . . . these convictions constitute an ongoing scheme and should be considered one felony under [Tennessee Code Annotated section] 40-35-107(4)."

A persistent offender is an offender who has received "[a]ny combination of five (5) or more prior felony convictions within the conviction class or higher, or within the next two (2) lower felony classes, where applicable." Tenn. Code Ann. § 40-35-107(a)(1). The statute provides that in determining the applicability of prior felonies,

> [e]xcept for convictions for which the statutory elements include serious bodily injury, bodily injury, threatened serious bodily injury, or threatened bodily injury to the victim or victims, or convictions for the offense of aggravated burglary under § 39-14-403, convictions for multiple felonies committed within the same twenty-four-hour period constitute one (1) conviction for the purpose of determining prior convictions.

Tenn. Code Ann. § 40-35-107(4).

The appellant's presentence report reflects the following offense dates for his forgery convictions: July 23, 1999; July 23, 1999; July 21, 1999; July 8, 1999; July 8, 1999; July 6, 1999; July 6, 1999; July 5, 1999; July 5, 1999; July 1, 1999; June 24, 1999; June 18, 1999; June 18, 1999; June 6, 1999. The trial court noted that the July 23 offenses would count as a single conviction, the July 8 offenses would count as a single conviction, the July 6 and July 5 offenses would count as a single conviction, and the June 18 offenses would count as a single conviction. After making that determination, the trial court stated, "I find that of these 13 prior E felonies that 8 of them are not within a 24 hour period. I do not find the law to be that a common scheme or plan is the operative criteria. I believe it is strictly a 24 hour period determination."

This court has previously stated that "[i]t is only when offenses are committed within twenty-four hours of each other in a single course of conduct that multiple offenses must be treated as one." State v. McKnight, 900 S.W.2d 36, 54 (Tenn. Crim. App. 1994).

Accordingly, we can find no error in the trial court sentencing the appellant as a persistent offender.

### III.  Conclusion

Finding no error, we affirm the judgments of the trial court.

 

_____
NORMA McGEE OGLE, JUDGE