IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 29, 2010

**STATE OF TENNESSEE v. CHANDA DAWN LANGSTON**

**Appeal from the Criminal Court for Davidson County**
**No. 2009-A-647    Cheryl A. Blackburn, Judge**

---

**No. M2009-02247-CCA-R3-CD - Filed September 30, 2010**

---

The Defendant, Chanda Dawn Langston, pled guilty to six counts of forgery between $1,000 and $10,000, a Class D felony, and to one count of theft of property over $60,000, a Class B felony.  On August 20, 2009, the Defendant was sentenced as a Range I offender to four years' confinement for each of the six forgery convictions and twelve years' confinement for the theft conviction, all to be served concurrently.  On appeal, the Defendant contends that her sentences are excessive and that the trial court erred in denying her request for alternative sentencing.  Although we conclude that the trial court erred in applying one enhancement factor, we hold that the sentence imposed by the trial court is appropriate.  The judgments of the trial court are affirmed.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Paul Julius Walwyn, Madison, Tennessee, for the appellant, Chanda Dawn Langston.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and James Milam, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

At the sentencing hearing, Barry Canter, the victim, testified that he was the owner and operator of Cooks Orthopedics and Putnam County Orthopedic Appliance Company. He said that he employed the Defendant as a bookkeeper and that she worked at his businesses for over six years.  He said he noticed unexplained money discrepancies and asked the Defendant if she knew the source of the problems.  Mr. Canter said the Defendant

responded by stating that she did not know anything and that she did not think accountants or billing agents were responsible. Mr. Canter stated that after this conversation, his wife noticed a company check written to the Defendant for $1,600. He said that he and his attorney confronted the Defendant with the check and that she admitted forging it.

Mr. Canter testified that he had evidence showing that the Defendant forged 149 company checks, beginning in July 2004 and continuing until October 2008, for a total loss of $233,285.79. He said the indictment reflected only a portion of this loss, charging the Defendant for forging fifty-five company checks, from January 2007 until October 2008, for a loss of about $106,000. Mr. Canter said the Defendant's actions forced him to borrow $200,000, secured by a second mortgage on his home, to keep his companies running. He said that he and his wife worked longer hours six days a week and earned reduced pay or no pay in an attempt to save the companies. He said that he was unable to pay employee commissions or bonuses. Mr. Canter stated that ordering the Defendant to pay restitution would not help the financial health of his companies, as it would take the Defendant more than thirty years to repay the amount taken.

Metropolitan Nashville Police Detective Casey Stupka testified that she investigated the forgeries and theft. She stated that the Defendant was authorized to write company checks for legitimate company purposes. She determined that the Defendant made company checks payable to herself and recorded the missing money as payment to company vendors. Detective Stupka said that she obtained a subpoena for the Defendant's bank account records and that she examined how the Defendant spent the money taken. She said the Defendant spent the money on fast food, a 2006 Dodge Durango, gasoline, and consumer goods. She stated the Defendant appeared to be supporting multiple people with the money.

The Defendant acknowledged that she forged 149 company checks, that she took company money and placed it in her personal bank account, and that her actions caused Mr. Canter and his companies financial trouble. She said she knew her actions would be discovered, and she acknowledged there was no justification for her acts. She stated that she did not tell Mr. Canter the truth when he first asked about the missing money because he did not ask if she was the person who took the money and because he did not suspect her at that time.

The Defendant expressed remorse. The Defendant testified that she wanted to repay the money taken but doubted if she could ever repay the full amount. The Defendant stated that she would attempt to pay at least half of her salary as restitution if she received an alternative sentence but that she would likely be unable to pay more than $250 per month even if she were able to obtain a good job.

The Defendant testified that she supported up to fifteen people with the money taken from Mr. Canter, including friends and family. She stated that she spent some of the money on necessities. She admitted she spent hundreds of dollars on hotel rooms and more than $300 per month on cellular telephones for herself and her boyfriend.

The trial court found that the following enhancement factors applied pursuant to Tennessee Code Annotated section 40-35-114:

> (1) the Defendant had a previous history of criminal behavior;

> (6) the amount of damage to property sustained by or taken from the victim was particularly great; and

> (14) the Defendant abused a position of private trust.

See T.C.A. § 40-35-114 (Supp. 2009). The trial court found no mitigating factors applicable.

The Defendant was sentenced to four years' confinement for each of the six forgery convictions and twelve years' confinement for the theft conviction. The sentences were imposed concurrently, for an effective sentence of twelve years' confinement. The trial court denied the Defendant's request for alternative sentencing, stating that confinement was necessary to avoid depreciating the seriousness of the offense and was particularly suited to provide an effective deterrence to others likely to commit similar offenses. This appeal followed.

**I**

The State contends that we should dismiss the Defendant's appeal because the Defendant failed to file a timely notice of appeal. The Defendant has not responded to this argument.

Rule 4 of the Tennessee Rules of Appellate Procedure requires a party to file a notice of appeal within thirty days "after the date of entry of the judgment appealed from." T.R.A.P. 4(a). The timely filing of a notice of appeal is not a prerequisite to the jurisdiction of this court. Id. In the interest of justice, we may waive the notice of appeal and proceed to analyze the issues raised by the parties.

The trial court filed its judgments on August 20, 2009. The Defendant, through counsel, filed a notice of appeal along with a motion to be declared indigent and to have appointed counsel for an appeal sixty-three days later on October 22, 2009. The record reflects that trial counsel was retained only for representation in the trial court and that

whether trial counsel would continue to represent the Defendant on appeal was unresolved until the notice of appeal was filed and the trial court ruled on the Defendant's request for appointed counsel. Under these circumstances, we conclude that the interest of justice warrants a waiver of the timely filing of a notice of appeal.

## II

The Defendant contends that her sentences are excessive because the trial court misapplied two enhancement factors and failed to apply mitigating factors. The State counters that the trial court properly determined the length of the Defendant's sentences. We hold that the sentences imposed were not excessive.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. §§ 40-35-401(d) and -402(d)(2006). As the Sentencing Commission Comments to these sections note, the burden is now on the appealing party to show that the sentencing is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "'the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" State v. Carter, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991)). In this respect, for the purpose of meaningful appellate review, the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994); see T.C.A. § 40-35-210(e).

Also, in conducting a de novo review, we must consider (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8)

the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236 (Tenn. 1986).

In imposing a sentence within the appropriate range of punishment for the defendant:

> [T]he court shall consider, but is not bound by, the following advisory sentencing guidelines:
>
> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210. From this, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Carter, 254 S.W.3d at 343 (quoting T.C.A. § 40-35-210(d)).

The Defendant argues first that the trial court erred by finding that she had a previous history of criminal behavior and in applying enhancement factor (1). See T.C.A. § 40-34-114(1) (allowing sentence enhancement based upon a defendant's prior criminal convictions or criminal behavior). The trial court found and gave great weight to enhancement factor (1), basing its finding on evidence of uncharged criminal behavior that was part of the same criminal scheme for which the Defendant was convicted but occurred before the dates listed in the indictment.

When considering prior criminal convictions and behavior under Code section 40-35-114(1), "[i]t is only when offenses are committed within twenty-four hours of each other in a single course of conduct that multiple offenses must be treated as one." State v. McKnight, 900 S.W.2d 36, 54 (Tenn. Crim. App. 1994) (holding that when a defendant was convicted in one trial of forty-six separate offenses occurring over an extended period, those offenses qualified as "prior criminal history" and could be used as an enhancement factor in the same trial); see also T.C.A. § 40-35-107(b)(4)).

The record reflects that the Defendant admitted to four years of forgery, with more than eighty instances occurring before the offenses charged in the indictment. The forgeries occurred over an extended period of time, and the sentencing court was not required to treat them as one offense. See McKnight, 900 S.W.2d at 54. Therefore, the record supports the trial court's finding of prior criminal behavior and its application of enhancement factor (1).

The Defendant also contends that the court misapplied enhancement factor (6) because the Defendant pled guilty to the highest grade of theft, that of $60,000 or more. See T.C.A. § 40-35-114(6) (allowing sentence enhancement when the amount of damage to property sustained by or taken from the victim was particularly great). When considering whether harm to the victim or property is particularly great under factor (6), this court has held that because "the punishment for theft is enhanced based upon the amount taken by the accused, use of this enhancement factor constitutes double enhancement in violation of the statute." State v. Grissom, 956 S.W.2d 514, 518 (Tenn. Crim. App. 1997). However, this court held that this enhancement factor was applicable when the theft involved $52,000, an amount approaching the minimum sum necessary to put the offense into the highest grade of theft, and when the victim's business losses were particularly damaging. See State v. Barbara D. Frank, No. 03C01-9209-CR-00303, Blount County, slip op. at 4 (Tenn. Crim. App. Dec. 22, 1993). This enhancement factor has also been applied when the theft involved $357,000, an amount far exceeding the $60,000 necessary to categorize the offense as the highest grade of theft, and when the victim's business losses were particularly damaging. See State v. Cynthia Taylor Mann, No. M1999-01390-CCA-R3-CD, Montgomery County, slip op. at 4-5 (Tenn. Crim. App. May 8, 2001).

The Defendant admitted taking over $106,000. This amount is approaching twice the $60,000 necessary for the offense to be categorized as the highest grade of theft. The Defendant's theft was particularly damaging to the victim's businesses. As a result of the Defendant's actions, Mr. Canter was forced to borrow $200,000, secured by a second mortgage on his home, to prevent his businesses from failing. He and his wife worked longer hours at reduced salary. He was unable to pay employee commissions or bonuses. The record supports the trial court's applying factor (6) to the Defendant's theft conviction. See Cynthia Taylor Mann, slip op. at 4-5; Barbara D. Frank, slip op. at 4. However, this enhancement factor is not applicable to the Defendant's acts of forgery, as it would "[constitute] double enhancement in violation of the statute." See Grissom, 956 S.W.2d at 518; see also T.C.A. § 39-14-114 (stating that forgery "is punishable as theft pursuant to [T.C.A.] § 39-14-105."). While the victim's business losses were particularly damaging, the highest amount taken through any of the six counts of forgery is $3,406.94, an amount that does not approach the $10,000 needed to raise the offense into the next grade of forgery. See T.C.A. § 39-14-105. Therefore, we hold that application of enhancement factor (6) is appropriate with regard to the theft but inappropriate with regard to the six counts of forgery.

The trial court found and gave great weight to enhancement factor (14), regarding abuse of a position of trust, because the Defendant was an employee in charge of maintaining Mr. Canter's financial books and concealed her wrongdoing by manipulating company records. See T.C.A. § 40-35-114(14). We conclude that the record supports application of enhancement factor (14).

The Defendant also contends that the trial court failed to find and apply numerous mitigating factors: (1) The Defendant's criminal conduct neither caused nor threatened serious bodily injury; (2) The Defendant acted under strong provocation; (3) Substantial grounds exist tending to excuse or justify the Defendant's criminal conduct, though failing to establish a defense; (7) The Defendant was motivated by a desire to provide necessities for the Defendant's family or the Defendant's self; and (13) The Defendant accepted immediate responsibility for her actions and indicated a desire to pay restitution to the victim. See T.C.A. § 40-35-113.

The trial court stated its consideration of mitigating factors, noting that its application of the enhancement and mitigating factors "[was] all the same" for both the forgeries and the theft. We note that there was no proof of any strong provocation, only the Defendant's desire to take money from her employer. There were likewise no substantial grounds to excuse or justify the Defendant's behavior, nor has the Defendant shown that her primary motivation was to provide necessities to her family. Although there is proof that the Defendant supported an extended network of family and friends, there is also proof that she splurged on luxury items such as hotels and expensive cellular phones. The Defendant did not accept immediate responsibility for her actions. She initially failed to disclose her actions and only accepted responsibility when confronted with proof of her forgeries. There is proof, however, that the Defendant's actions neither caused nor threatened serious bodily injury and that she expressed remorse and a desire to pay restitution. See T.C.A. §§ 40-35-113(1), (13).

Taking into account the trial court's misapplication of enhancement factor (6) to the sentences for the forgery convictions and the court's failure to consider mitigating factors (1) and (13) for all of the Defendant's sentences, we consider the length of the sentences imposed. Upon review, we conclude that the trial court's significant weighing of enhancement factors (1) and (14), even when considered in light of the mitigating proof, supports sentences of twelve years for Class B felony theft and four years each for the six counts of Class D felony forgery. The Defendant has failed to show that the trial court erred in imposing sentences of twelve and four years.

## III

The Defendant contends that the trial court erred in denying the Defendant's request for alternative sentencing, arguing that she was presumed eligible for alternative sentencing and that the seriousness of her offenses did not outweigh factors favoring community corrections sentences. The State contends that the trial court properly denied alternative sentencing. We agree with the State.

Initially, we note that the Defendant was not eligible for probation for the theft conviction because she received a twelve-year sentence. See T.C.A. § 40-35-303(a). Additionally, the Defendant was not to be considered a favorable candidate for alternative sentencing for the theft conviction because she was convicted of a Class B felony. See T.C.A. § 40-35-102(6) (stating that a qualified "especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary"). Despite this, the Defendant was eligible for community corrections sentences. See T.C.A. § 40-36-106(a)(1). However, mere eligibility does not automatically entitle a defendant to a sentence under the Community Corrections Act. See State v. Beverly Dixon, No. W2004-00194-CCA-R3-CD, Shelby County, slip op. at 10 (Tenn. Crim. App. June 30, 2005) (citing State v. Ball, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998)). The Community Corrections Act must be read together with the Sentencing Act as a whole. See State v. Wagner, 753 S.W.2d 145, 147 (Tenn. Crim. App. 1988).

When determining if incarceration is appropriate, a trial court should consider if:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1); see also State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

In denying community corrections, the trial court found that confinement was necessary to avoid depreciating the seriousness of the offense and that confinement was

necessary to serve as a deterrent to others likely to commit similar crimes. If the seriousness of the offense is the basis for the denial of alternative sentencing, "'the circumstances of the offense as committed must be especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring a sentence other than confinement." State v. Trotter, 201 S.W.3d 651, 654 (Tenn. 2006) (quoting State v. Grissom, 956 S.W.2d 514, 520 (Tenn. Crim. App. 1997)). In Trotter, defendant employees forged company checks worth nearly $500,000 over a two-year period and spent the money on luxury items and illegal drugs. The defendants did not have prior criminal records and expressed remorse. See Trotter, 201 S.W.3d at 652-53. Our supreme court held that the circumstances were "offensive, excessive, and of an exaggerated degree," and outweighed any factors in favor of an alternative sentence. Id. at 655.

We note that the Defendant does not have a long history of criminal conduct, other than the offenses at hand, and less restrictive measures than confinement have not been applied to the Defendant. Also, the Defendant testified that an alternative sentence would provide an opportunity to pay restitution to the victim and enable her to care for her children. We note, however, that Mr. Canter testified that the rate at which the Defendant proposed to pay restitution would not rescue his businesses from their dire financial straits.

The excessive nature of the Defendant's offense outweighs factors in favor of an alternative sentence and supports the denial of an alternative sentence. See Trotter, 201 S.W.3d at 655 (holding that a sentence of confinement was necessary to avoid depreciating the seriousness of the offense and that the excessive nature of the offense warranted the denial of an alternative sentence); Beverly Dixon, slip op. at 10 (holding that a defendant bookkeeper was properly denied probation and community corrections when she forged company checks and stole at least $133,000 from her employer, causing the financial ruin of her employer). The Defendant's forgeries were repeated more than 100 times over many years and nearly destroyed the victim's businesses. The money was used to buy luxury items and support friends. The Defendant has not shown that the trial court erred in determining the manner of her sentences.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE