IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 21, 2016

## STATE OF TENNESSEE v. BRIDGET BONDURANT SHIRER

**Appeal from the Circuit Court for Moore County**
**Nos. 1327, 1328, 1329, 1330, 1344 Forest A. Durard, Jr., Judge**

_____

**No. M2015-01486-CCA-R3-CD – Filed October 31, 2016**

_____

The appellant, Bridget Bondurant Shirer, pled guilty in the Moore County Circuit Court to five counts of aggravated burglary, a Class C felony; seven counts of theft of property valued $1,000 or more but less than $10,000, a Class D felony; one count of failure to appear, a Class D felony; and one count of forgery in the amount of $500 or less, a Class E felony. After a sentencing hearing, the trial court sentenced the appellant to an effective fourteen-year sentence to be served as eight years in confinement followed by six years on community corrections. On appeal, the appellant contends that the length and manner of service of her effective fourteen-year sentence is excessive. Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed, and the Case is Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and TIMOTHY L. EASTER, JJ., joined.

Robert T. Carter, Tullahoma, Tennessee, for the appellant, Bridget Bondurant Shirer.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Robert James Carter, District Attorney General; and Holly Eubanks, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

On November 1, 2014, the Moore County Grand Jury returned four indictments against the appellant. In case number 1327, the appellant was charged in counts one and two with alternative theories of theft of property valued $1,000 or more but less than $10,000 and in counts three and four with alternative theories of theft of property valued $1,000 or more but less than $10,000. In case number 1328, the appellant was charged in counts one and four with aggravated burglary, in counts two and three with alternative theories of theft of property valued $1,000 or more but less than $10,000, and in counts five and six with alternative theories of theft of property valued $1,000 or more but less than $10,000.[1] In case number 1329, the appellant was charged in counts one, four, and seven with aggravated burglary, in counts two and three with alternative theories of theft of property valued $1,000 or more but less than $10,000, in counts five and six with alternative theories of theft of property valued $1,000 or more but less than $10,000, and in counts eight and nine with alternative theories of theft of property valued $1,000 or more but less than $10,000. Finally, in case number 1330, the appellant was charged with forgery in the amount of $500 or less.

On March 25, 2015, the appellant entered "open" guilty pleas to counts one and three in case number 1327; counts one, two, four, and five in case number 1328; counts one, two, four, five, seven, and eight in case number 1329; and as charged in case number 1330. The remaining counts were dismissed.

At the guilty plea hearing, the State gave the following factual account of the crimes: In case number 1327, the appellant was hired to clean the home of Norma Fanning. While the appellant was in Ms. Fanning's home on October 29 and November 5, 2013, she took two, fourteen-carat gold necklaces and a global positioning system. The appellant's parents later found two pendants from the necklaces at a pawn shop. However, the other items were either sold or melted. In case number 1328, the appellant entered the home of Scott and Shelly Gorham on December 17 and December 24, 2013, without their permission and took jewelry. During the December 24 incident, the victims returned home to find the appellant coming down the stairs. Ms. Gorham later found an e-cigarette on her jewelry box, and the cigarette looked like one the appellant used. Ms. Gorham opened her jewelry box and discovered that some of her jewelry was missing. The appellant's parents found at least one of the missing items at a pawn shop and returned it to Ms. Gorham. However, the other items were either sold or melted. In case number 1329, the appellant entered the home of Josh and Corrie Bondurant on March 10, March 17, and March 24, 2014, without the couple's permission and took jewelry, which she pawned in Tullahoma and Winchester. On May 19, 2014, the appellant acquired

---

[1] We note that that the appellant also was charged in count seven with aggravated burglary. However, there was no mention of count seven at the plea hearing, and no judgment for count seven is in the record. If appropriate on remand, the trial court should enter a judgment reflecting the disposition of count seven.

some of Billy Fanning's checks and passed one of them for $50 at a coffee shop. The appellant passed other checks outside of Moore County. The appellant admitted to forging the checks and said she used the money to buy pills. The appellant also admitted to taking the property in the theft cases. The trial court accepted the appellant's guilty pleas and scheduled a sentencing hearing for May 22, 2015.

On May 22, 2015, the appellant was charged by information in case number 1344 with failure to appear in case number 1328 "and other cases" on February 20, 2015, and entered an "open" plea to the charge. To establish a factual basis for the plea, Investigator Mike Rainey of the Moore County Sheriff's Department testified that on February 20, 2015, the appellant was supposed to appear in court but failed to do so. The appellant provided an excuse from her employer, an obstetrician-gynecologist's office, for her absence. Investigator Rainey telephoned the medical office, and a woman there told him that the appellant had been treated for influenza and sent home the previous day, February 19. Investigator Rainey later subpoenaed the appellant's medical and employment records from the office. The records did not show that that the appellant had received medical treatment on February 19 and showed that she had worked in the office for 7.92 hours on February 20. Investigator Rainey also subpoenaed the appellant's cellular telephone records, which showed that she used her telephone at the medical office, but not her home, on February 20. Upon being questioned by the trial court, the appellant acknowledged giving the court a "bogus" doctor's excuse on February 20.

After accepting the appellant's plea, the trial court immediately held a sentencing hearing for all five cases. During the hearing, Investigator Rainey testified that he had been a resident of Moore County for forty-nine years. Moore was the smallest county in Tennessee geographically, and its population was only about 6,000 people. Lynchburg was the main town, and the county had one stoplight. Investigator Rainey said that about eighty percent of his caseload involved burglaries, and he acknowledged that burglaries and aggravated burglaries needed to be deterred in the county. On cross-examination, Investigator Rainey testified that about fifty percent of burglaries were drug-related and that some defendants committed them in order to obtain money for their drug habits.

The appellant testified that she was thirty-five years old, that she had two children, and that the crimes in these cases resulted from her addiction to painkillers. She said that her addiction began in 2009 when she had a cesarean-section and her doctor prescribed Percocet. She stated that she became addicted to the drug within two weeks, that the pills gave her energy, and that they "made [her] feel like [she] could do what [she] needed to do." When the appellant had only two pills remaining from a forty- to sixty-pill prescription, she began to worry about what she would do without them. She said that she had never been addicted previously but that "I think an addiction is a disease. And I've always had it. And it just came out at that point when I was given the medication."

The appellant testified that she was consuming thirty or forty pills per day, that she would consume seven to ten pills at one time, and that she "would buy as many as [she] could get." The appellant never obtained the pills from a doctor because her demand for them was too much for prescriptions. Therefore, she bought them "off the street" for $9 or $10 each. The appellant took the victims' property "[t]o get money for more pills." She knew she needed to stop consuming the pills but did not do anything to stop her addiction.

The appellant testified that she went through a "very nasty" divorce in 2013. In December 2013, she went to her parents for help with her drug addiction, and they tried to "rehab" her at home without success. At the end of May 2014, the appellant returned to her parents for help, and they sent her to Bradford, an inpatient rehabilitation facility. The appellant stayed there for seventeen days and then went to a halfway house for three months for intensive outpatient recovery. She was required to work forty hours per week while she lived at the halfway house, and she rode the bus to and from work. She also attended at least one Narcotics Anonymous (NA) or Alcoholics Anonymous (AA) meeting per day and participated in Celebrate Recovery at church. The appellant said that after leaving the halfway house, she continued to attend recovery meetings.

The appellant acknowledged that she committed the thefts in this case from October 2013 to March 2014. The appellant's father took her to the pawn shops where she had disposed of the victims' property, and she was able to retrieve some of the items. The appellant entered rehabilitation on June 7, 2014, and had not taken any pills since then. Regarding the appellant's failure to appear in court, she said she had been out of work that week due to bad weather, that she was going to be promoted, and that she thought she needed to be at work on February 20, 2015, rather than in court. The appellant acknowledged that she gave a fake doctor's excuse to the trial court and said that she made "[a] very poor decision."

On cross-examination, the appellant acknowledged that she committed the offenses in these cases while she was living with her parents. She said that Norma Fanning was the grandmother of one of her sons, that Billy Fanning was her son's father, that Scott and Shelly Gorham were her first cousins, and that Josh Bondurant was her brother. The office manager for the appellant's employer was a family friend and knew about the appellant's drug issues but did not know about the fake doctor's excuse. One of the two doctors in the office also knew about the appellant's drug issues.

The State introduced the appellant's presentence report into evidence. According to the report, the appellant graduated from high school and received an associate's degree from Middle Tennessee State University. She also attended Nossi College of Art. In the

report, the appellant described her physical and mental health as "excellent." She said she began consuming alcohol when she was sixteen years old but had not consumed any alcohol since she completed rehabilitation in 2014. The appellant said she also began using marijuana when she was sixteen and used it sporadically until she completed rehabilitation. According to the report, the appellant worked as a waitress for Tim's Ford Marina from September 2013 to March 2014, as a photographer for Jack Daniels from April 2014 to June 2014, and as a medical records keeper for Ob Gyn Associates of Nashville from August 2014 to February 2015. The appellant also stated in the report that she worked as an administrator at Robert R. Shirer and Sons from 2005 to 2009.

In addition to the presentence report, the State introduced into evidence four judicial diversion orders, showing that the appellant pled guilty to four counts of forgery in Franklin County on October 30, 2014, that the trial court granted her request for judicial diversion, and that the court placed her on supervised probation for four years. According to the orders, the forgery offenses occurred on April 13, April 22, May 7, and May 27, 2014.[2]

The trial court noted that the appellant was a Range I, standard offender. Regarding case number 1327 involving theft of property from Norma Fanning in counts one and three, the trial court applied enhancement factor (14), that the appellant abused a position of private trust, and mitigating factor (1), that the appellant's conduct neither caused nor threatened serious bodily injury. See Tenn. Code Ann. §§ 40-35-113(1), -114(14). The court also applied enhancement factor (1), that the appellant has a previous history of criminal behavior, in addition to that necessary to establish the appropriate range, to count three because the theft in count one occurred prior to the theft in count three. See Tenn. Code Ann. § 40-35-114(1). The trial court sentenced the appellant to two years for count one and three years for count three, Class D felonies, and ordered that she pay restitution of $3,650.

Regarding case number 1328 involving aggravated burglary of the Gorham home in counts one and four and theft of their property in counts two and five, the trial court applied enhancement factors (1) and (14) and mitigating factor (1) to all counts. The trial court noted that for each time the appellant participated in subsequent criminal activity, the court increased the amount of weight it gave to enhancement factor (1).[3] The court

---

[2] Defense counsel advised the trial court that a Franklin County probation violation warrant had been filed but not yet served on the appellant.

[3] The appellant conceded the applicability of enhancement factor (1) during the sentencing hearing and does not contest the applicability of the factor on appeal. We note that offenses committed over an extended period of time can qualify as prior criminal history and be used for enhancement during the same trial. See State v. McKnight, 900 S.W.2d 36, 54 (Tenn. Crim. App. 1994) (stating that "[i]t is only when offenses are committed within twenty-four hours of each other in a single course of conduct that multiple offenses must be treated as one").

sentenced the appellant to five years in count one, a Class C felony; four years in count two, a Class D felony; six years in count four, a Class C felony; and four years in count five, a Class D felony, and ordered that she pay restitution of $2,500.

Regarding case number 1329 involving aggravated burglary of the Bondurant home in counts one, four, and seven and theft of their property in counts two, five, and eight, the trial court applied enhancement factors (1) and (14) and mitigating factor (1) to all counts. The court sentenced the appellant to six years in counts one, four, and seven, Class C felonies, and four years in counts two, five, and eight, Class D felonies, and ordered that she pay restitution of $3,500.

Regarding case number 1330 involving the forgery of Billy Fanning's check, a Class E felony, the trial court applied the same enhancement and mitigating factors and sentenced the appellant to two years and ordered that she pay restitution of $50. The trial court also sentenced the appellant to two years in case number 1344 for failure to appear, a Class E felony.

The trial court ordered that the appellant serve all of the sentences in case numbers 1327 and 1328 concurrently for an effective sentence of six years. The court said it thought consecutive sentencing was mandatory in case number 1344 because the appellant was on bond when she failed to appear in court and, therefore, ordered that the appellant serve the two-year sentence in that case consecutively to the six-year sentence. The trial court also ordered that the appellant serve all of the sentences in case numbers 1329 and 1330 concurrently for an additional effective sentence of six years. The court determined that the appellant should serve the second effective six-year sentence consecutively to the effective eight-year sentence, finding that by the time the appellant committed the offenses in case number 1329, her record of criminal activity was extensive. See Tenn. Code Ann. § 40-35-115(b)(2). Thus, the court ordered a total effective sentence of fourteen years.

As to alternative sentencing, the trial court stated that the appellant came from a good family and "explained how she got into this." The court noted that the appellant's first attempt at rehabilitation failed. The court considered whether the appellant would abide by the terms of probation and stated as follows:

> What strikes her really bad there is her actions on this failure to appear. I had the authority [to] order her to be in court on the time and date certain, and she attempted to perpetrate a fraud on the Court by giving me this bogus doctor's excuse, rather than just coming to court.

And I'm going to tell you, that weighs heavily on the Court, because she attempted to defraud me. And it just shows her total lack of respect for authority. And this occurred while she was out on bond on these other cases.

The court also found that full probation would depreciate the seriousness of the offenses and that deterrence was needed for other people who commit similar offenses. The court ordered that the appellant serve the sentences in case numbers 1327, 1328, and 1344 in confinement and the sentences in case numbers 1329 and 1330 on community corrections. Thus, the court ordered that the appellant serve eight years in confinement followed by six years on community corrections.

## II. Analysis

The appellant contends that the trial court did not give enough weight to the mitigating circumstances of the offenses, specifically that her addiction to painkillers "impelled her actions," that she committed non-violent felony property offenses over a six- or seven-month "'crime spree,'" that she had no prior criminal record, and that her second attempt at rehabilitation was successful. The appellant also contends that the trial court erred by not granting alternative sentencing in case numbers 1327, 1328, and 1344, claiming that she also expressed remorse and attempted to retrieve the items she pawned. The State argues that the trial court properly sentenced the appellant. We agree with the State.

The length, range, or manner of service of a sentence imposed by the trial court is to be reviewed under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012); see also State v. Pollard, 432 S.W.3d 851, 859 (Tenn. 2013) (applying the standard to consecutive sentencing); State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the standard to alternative sentencing). In sentencing a defendant, the trial court shall consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in her own behalf; and (8) the potential for rehabilitation or treatment. See Tenn.Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of her sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in § 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c).

Although the trial court should consider enhancement and mitigating factors, the statutory enhancement factors are advisory only. See Tenn. Code Ann. § 40-35-114; see also Bise, 380 S.W.3d at 701; State v. Carter, 254 S.W.3d 335, 343 (Tenn. 2008). Our supreme court has stated that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343. Appellate courts are "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346.

An appellant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a). The appellant's sentences meet this requirement. Moreover, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6). Tennessee Code Annotated section 40-35-103(1) sets forth the following sentencing considerations which are utilized in determining the appropriateness of alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

See also State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5). A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

As to the appellant's claim that she was entitled to mitigation because her addiction to painkillers caused her to commit the crimes, mitigating factor (8) provides that "[t]he defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense." Tenn. Code Ann. § 40-35-113(8). However, the factor also specifies that "the voluntary use of intoxicants does not fall within the purview of this factor." Tenn. Code Ann. § 40-35-113(8). Moreover, this court has concluded that a defendant is not entitled to mitigation for the defendant's drug addiction when the defendant committed numerous crimes over an extended period of time without seeking treatment for the addiction. See State v. Daniel James Cosgrove, No. M2001-02127-CCA-R3-CD, 2002 WL 31528547, at *5 (Tenn. Crim. App. at Nashville, Nov. 15, 2002). Therefore, the appellant was not entitled to mitigation of her sentences based upon her claim that her addiction caused her to commit the offenses.

As to the appellant's claim that she was entitled to mitigation because she committed non-violent felony property offenses, the trial court mitigated the appellant's sentences based upon factor (1), that the appellant's conduct neither caused nor threatened serious bodily injury. See Tenn. Code Ann. § 40-35-113(1). The amount of weight the trial court gave that factor was left to the trial court's sound discretion. Carter, 254 S.W.3d at 345. Furthermore, the 2005 amendments to the 1989 Sentencing Act "deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." Id. at 344.

The appellant raises some mitigating factors that are not enumerated factors but could be considered factors under Tennessee Code Annotated section 40-35-113(13), the

catch-all provision. Regarding her claims that she was entitled to mitigation because she committed the offenses over a six- or seven-month "'crime spree'" and successfully completed rehabilitation, we disagree with the appellant. The appellant repeatedly stole from family members over a significant period of time prior to seeking professional help for her addiction. Although she initially sought help in December 2013, her first attempt occurred at home and was unsuccessful. She then continued to commit crimes and waited six months until her second attempt at rehabilitation. Even after rehabilitation, she deceived the trial court with the fake doctor's excuse. Thus, we conclude that she is not entitled to mitigation of her sentences.

Finally, the appellant claims that the trial court should have mitigated her sentences because she had no prior criminal record. Although a trial court may consider a defendant's lack of a prior criminal record as a mitigating factor, it is not required to do so. State v. Williams, 920 S.W.2d 247, 261 (Tenn. Crim. App. 1995). The trial court did not abuse its discretion in determining the lengths of the appellant's sentences.

Regarding the appellant's claim that the trial court should have granted additional alternative sentencing, the court was very troubled by the appellant's attempt to defraud the court while she was on bond in the instant cases. We note that the appellant also was on probation for the Franklin County forgeries when she submitted the fake doctor's excuse, and we agree with the trial court. In addition, the trial court found that deterrence was needed and that confinement was necessary to avoid depreciating the seriousness of the offenses, neither of which the appellant contests. Thus, we conclude that the trial court did not abuse its discretion by ordering that the appellant serve eight years in confinement.

We note that the appellant's plea agreement in case number 1327 provides that she was to plead guilty to counts one and three and that counts two and four would be dismissed. The plea agreement in case number 1328 similarly provides that the appellant was to plead guilty in counts one, two, four, and five, and the agreement in case number 1329 provides that the appellant was to plead guilty in counts one, two, four, five, seven, and eight. Moreover, the guilty plea hearing transcript reflects that the appellant pled guilty to those twelve counts. Nevertheless, the judgments of conviction incorrectly reflect that the appellant pled guilty to all nineteen offenses charged in the indictments for those three cases and that the trial court merged some of the theft counts into corresponding counts alleging an alternative theory of the offense. Thus, we remand the case to the trial court for correction of the judgments in counts two and four in case number 1327, in counts three and six in case number 1328, and in counts three, six, and nine in case number 1329 to reflect that those counts were dismissed. Finally, the judgment of conviction for count one in case number 1329 incorrectly reflects that it was

to be served consecutively to case number 1334, not 1344.  Thus, the court is also to correct that judgment.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court but remand the case to the trial court for correction of some of the judgments.

_____
NORMA MCGEE OGLE, JUDGE